[596 NYS2d 421]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v ANGELA C. THOMPSON, Appellant-Respondent.

First Department, April 27, 1993

APPEARANCES OF COUNSEL

*Ronald R. Laskorski* and *Larry J. Sheehan,* Scarsdale, for appellant-respondent.

*Donald J. Siewert* of counsel, New York City *(Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent-appellant.

## OPINION OF THE COURT

Asch, J.

Angela C. Thompson was convicted of criminal sale of a controlled substance in the first degree, for which she was sentenced to a prison term of eight years to life. She is incarcerated and has, at this time, served three years of her term.

Defendant contends that the evidence at her trial failed to demonstrate beyond a reasonable doubt that she was the woman who sold an undercover officer 214 vials containing cocaine. However, there was ample evidence that the officer had sufficient opportunity during the sale to observe defendant closely enough to permit a reliable identification at the trial, and the jury was entitled to credit this identification. Further, defendant's contention that the People failed to demonstrate that she sold two ounces or more of cocaine was refuted by the testimony of the chemist who testified for the People as to the procedure he employed in weighing the contents of the vials. It was "for the jury to decide whether the expert had adequately analyzed and weighed the contents and whether his opinion was entitled to be credited" *(People v Argro,* 37 NY2d 929, 930).

The People have cross-appealed, however, contending that the court illegally imposed a sentence which was less than the statutory minimum of 15 years to life.

At times we Judges insulate ourselves from the pain of facing the consequences of what we decide in a given case by invoking the "black letter" of the law. In this case, we are not

simply applying an abstract principle of law. We are actually confronted with the stark reality of what will be the consequences for Angela of an enhanced prison term, as well as for the rest of the community to whom she must ultimately be returned.

Angela C. Thompson, at age 17 was properly convicted for selling drugs. She has already served three years of the original sentence of eight years to life. Angela has not murdered anyone. In fact, she has not ever been convicted of any other crime but this one.

In *People v Broadie* (37 NY2d 100, 119, *cert denied* 423 US 950), the Court of Appeals in finding that sentences imposed by the so-called drug laws were not so disproportionate as to constitute cruel and unusual punishment in violation of State and Federal limitations, nevertheless acknowledged that "in some rare case on its particular facts it may * * * be found that the statut[e has] been unconstitutionally applied."

In the instant case, Justice Bing Newton found that the 15-year minimum sentence would be unconstitutional as applied to Ms. Thompson and invoked the "rare case" exception, sentencing the appellant to the reduced sentence of eight years to life.

The court focused on various factors in arriving at her decision such as the appellant's age, lack of a criminal history and the pretrial plea offer of three years to life.

There was an on-going investigation with numerous "buys" made at the premises but the appellant was not implicated in any sales before or after this transaction. Also, the instant offense appears to be inconsistent with appellant's history. The appellant's participation in the exchange appears to have been made at the behest of her uncle, codefendant, Norman Little. She is the mother of a young son. She had no prior criminal record whatsoever prior to her involvement in this case.

The appellant is presently serving her sentence at Albion Correctional Facility. Prior to that time she was incarcerated at Bedford Hills Correctional Facility, where she was enrolled at Mercy College. Ms. Thompson is the product of a broken home. She lost her natural parents and was reared by her maternal grandmother. By the age of 13 she was living with various relatives and ultimately moved in with an aunt in Queens, New York.

Therefore, based upon these factors the draconian sentence

urged by the State, as applied to this defendant under these circumstances would constitute cruel and inhuman punishment (NY Const, art I, § 5; US Const 8th Amend).

We are persuaded to adopt this position because of the most compelling reasons advanced by Justice Juanita Bing Newton, the Trial Judge. She said among other things:

"This case is bringing me to tears literally.

"In the three years I've sat on the Bench, I've never been reduced to tears.

"I do so because I look at the defendant, that I know a Judge is not supposed to; I put myself in the feet of Angela Thompson and I can remember being an 18 year old girl * * * and its very difficult for me to wipe out all that in my life, and then sentencing her to 15 years to life without wiping out the possibility of Angela Thompson * * *

"The court, however, feels very strong that the only way we can have an honorable society is by not having a lawless society and that means the court must, on each and every occasion, apply the law as precisely and impeccably as we are able to do so, with our God given natural talents * * *

"I know the defendant committed this crime when she was 17 years of age.

"I'll note that New York State is one of the few jurisdictions that would even try her as an adult at age 17.

"Most states, she would be considered, and in Federal system, she would be considered a youth.

"I will note that while defendant was found in the location at the time the search warrant was executed, that this indicated a single transgression of the law.

"Now, I do not have my head in a hole, like an ostrich, and I understand that Miss Thompson understood fully well what she was involved in.

"And I also understand that she, in her life, and I think it is appropriate, for the record, was raised not by her parents, because of death, early age, twenty-seven, of her mother; she was raised by various grandparents and sisters, older sisters and father, who does not presently reside in the United States.

"And I think that she, like so many of our young people, are not focused on the fact that selling drugs is bad, and that sounds like a crazy conclusion, but, unfortunately, a lot of people in our society, from investment bankers to people who

sell drugs, are driven not by a sense of morality; maybe there is a pervading sense of amorality in our society, but the ultimate goal is make money, and you make money doing whatever you have to do.

"This is what was presented to this 17 year old girl.

"Her uncle, Norman Little, obviously is the person who put her in this position, and offered her this as an option to making $3.35 an hour in MacDonalds.

"It's hard to say whether this is not uncharacteristic of Miss Thompson because she's never done anything else, that we know of, either before or after the commission of this crime. So, I guess this is uncharacteristic.

"And it's not clear whether anyone forced her to do it but I'm certain that her uncle, Mr. Norman Little, perhaps made her an offer that she couldn't refuse.

"I know how the defendant got mixed up in this, but I don't know that it was a reasoned and thoughtful determination.

"And I don't think for a minute she ever thought that she would be faced with the possibility of spending the rest of her life, her young adult life, in jail, serving a 15 year to life sentence * * *

"I conclude that the defendant, to be sentenced to 15 years to life, would be getting an unconstitutional sentence. And I will not sentence her to 15 years to life.

"I make this and I want the record to be clear I make this determination not on a discretionary basis, but in applying the *Broadie* standard to this case * * *

"I agree we have to be cautious but in my brief period on the Bench and it should be noted it's only three years, combined with my prior activity as a prosecutor, and working specifically on sentencing issues with the Governor's Sentencing Guideline Committee, I conclude that this is a rare case that falls within the *Broadie* standard."

The New York State Commissioner of Correction, as well as other officials, agree, that the punitive sentences mandated 20 years ago, under the drug laws, have proven "ineffective at crimping the drug scourge but highly effective at packing the prisons with relatively low-ranking, non-violent inmates." (New York Times, Mar. 23, 1993, at B 1.) It has resulted in disproportionate sentences. As argued by one prisoner, quoted in the New York Times *(ibid.),* " 'I mean, Amy Fisher will be out in four years and 10 months for shooting that woman in

the head, and Robert Chambers got five years for the Central Park strangling', said Mr. Cipollone, fervid for proportional justice as he serves 15 years to life here in the Downstate Correctional Facility for having once sold 2.34 ounces of cocaine to an undercover narcotics detective.' "

The genius of our constitutional system is that it is not static, but rather, yields to the lessons and requirements of changing times. Certainly, the imposition of such a harsh punishment on a teenager violates the Constitution.

It is unfortunate that the taxpayers are spending approximately $35,000 per year for each inmate who is entombed in a prison cell, as compared with $5,000 which would be the yearly cost of a realistic rehabilitation program for those who might be amenable to treatment. The financial cost of keeping Angela C. Thompson in prison for 15 years, as well as the cost of caring for her child, will be extremely high, but its cost in suffering and wasted opportunity will be *incalculable.*

We choose to ignore those gratuitous remarks by the dissenters which verge on the *ad hominem* and will not answer in kind. It cannot be disputed that the Rockefeller drug laws of 20 years ago have failed in reaching their objective, and, further, that in certain cases, at least, the imposition of their harsh mandatory sentences imposes such an injustice that it results in a constitutional violation. This, in our opinion, is the situation in the case under consideration before the Court. We are required by our oaths of office to redress this violation and accordingly, affirm the trial court.

A system of justice which mandates a 15-year prison sentence, as a minimum, on a 17-year-old girl, who was not cared for by parents and under the domination of her uncle, who was the prime mover in the sale of narcotics, also mandates a lifetime of crime and imposes on the community, upon her release, a woman who may be incapable of anything but criminal activity. If we do not attempt to rehabilitate such young people, we condemn ourselves as well.

Accordingly, the judgment of the Supreme Court, New York County (Juanita Bing Newton, J.), rendered December 11, 1989, convicting defendant, after trial by jury, of criminal sale of a controlled substance in the first degree, and sentencing her to a term of eight years to life, should be affirmed.

WALLACH, J. (dissenting). We are unanimous in affirming the conviction for criminal sale of a controlled substance in the first degree. Our sole disagreement arises, by reason of the

People's cross appeal, upon the issue of the lawful sentence which may be imposed upon this conviction. The sentencing court took the view, adopted by the majority, that this appeal presents the "rare" prosecution, hypothetically referred to in the seminal case of *People v Broadie* (37 NY2d 100, *cert denied* 423 US 950, upholding generally the constitutionality of the New York mandatory drug crime sentencing scheme), where the statutory minimum sentence of 15 years to life may be so severe, when viewed against the particular facts of a case, as to constitute "cruel and unusual punishment" within the meaning of the Eighth Amendment of the US Constitution and article I (§ 5) of the New York State Constitution. Such challenges have themselves been rare, and in far more compelling cases than this one have been firmly rejected.

The Legislature has prescribed that a defendant convicted of criminal sale of a controlled substance in the first degree, a class A-I felony, must be sentenced to at least 15 years to life imprisonment. (Penal Law § 70.00 [2] [a]; [3] [a] [i]; § 220.43.) The facial constitutionality of this provision is conceded by defendant. True, the Court of Appeals has indicated that New York's drug sentencing statutes may be unconstitutional as applied in "rare" cases, for example, to defendants whose involvement in the offense is only " 'accidental' " *(People v Broadie,* 37 NY2d, *supra,* at 113) or who "only technically fit the statutory definition of the offender class" *(supra,* at 119). The sentencing court applied this "rare case" exception in holding that a 15-year minimum would be unconstitutional in this case, and sentenced defendant to eight years to life. This sentence must be vacated, and defendant must be resentenced to not less than 15 years to life, the minimum term mandated for offenders of her class.

Defendant's crime was no mere "technical" or "accidental" violation of the narcotics laws. On the contrary, she made a large sale of cocaine, acting virtually on her own. Her actions reflected her intimate involvement in a major drug-selling operation in the building where the sale took place. Undercover Officer Gray testified at defendant's trial that she was present in the building when he arrived. Ordered by another to "take care of" Gray, defendant asked him what he wanted. When Gray told her that he wanted a large number of "bottles"—that is, cocaine—she led him to the basement, went directly to the cache where the drugs were stored and returned with 214 vials. With Gray's help, defendant carefully counted out 200 vials. She then offered Gray a bonus of 14

vials, over Gray's objection that he should get 20. Defendant argued at length with Gray over the number of bonus vials. Finally, he accepted the lesser amount and paid defendant $2,000 cash when she promised to "take care of" him personally the "[n]ext time". She then led him back upstairs.

This conduct established that defendant was a high-level participant in the drug-selling operation, familiar with its details. She took full charge of the entire transaction and spoke to no one but Gray. She knew without asking where to find the vials, how many vials to give as a bonus and how much Gray should pay. Significantly, when defendant's uncle and codefendant, Norman Little, appeared briefly in the basement room, he did not interrupt defendant, speak to her, or indicate in any manner that her conduct was anything but routine. Furthermore, defendant carefully counted the vials, as a seasoned drug merchant would. She protected the business by limiting Gray's premium to 14 vials, and she actively promoted future sales by promising to "take care of" Gray the next time he came. Finally, the police arrested defendant in the same building six weeks later.

The sentencing Judge did not minimize these facts and did not apply the "rare case" exception on any theory that defendant was merely an accidental or technical violator of the narcotics laws. To the contrary, the Judge acknowledged that defendant "understood fully well what she was involved in." The court applied the exception because defendant was a 17-year-old first offender. The Judge concluded that defendant was too young to have "focused on" the evil of selling drugs, or to have considered the possibility that she might spend "the rest of * * * her young adult life" in prison, and for those reasons could not constitutionally receive the statutory minimum term.

Unfortunately for defendant, the Legislature did not provide for mitigating factors exempting any defendants, including young ones, from the reach of the drug sentencing laws. There is certainly no constitutional reason for exempting this defendant, given her education and her conscious and deliberate involvement in heavy narcotics crime. To the contrary, the statutes are based on the need to isolate persons like defendant and deter others from offenses like hers, in view of the devastation wrought by "the epidemic of drug abuse" (People v Broadie, 37 NY2d, supra, at 115). Our own decisions reflect the same policy (People v Garcia, 99 AD2d 738; People v Mansell, 79 AD2d 582), with recent exceptions only where

considerable sentencing disparity was presented with respect to codefendants *(People v Skeffery,* 188 AD2d 438; *People v Andrews,* 176 AD2d 530, 531-532, *lv denied* 79 NY2d 918), a circumstance not relevant here.

Two cases the Court of Appeals has decided since *Broadie (supra)* demonstrate that this defendant may constitutionally be sentenced to the statutorily mandated term of 15 years to life. In *People v Jones* (39 NY2d 694), the defendant, a "mill-hand" in a heroin packaging and distribution operation who was sentenced to 15 years to life imprisonment, argued that his sentence constituted cruel and unusual punishment. The Court of Appeals responded that only "exceptional circumstances" can defeat the principle that a sentence of imprisonment within the limits of a valid statute "ordinarily is not a cruel and unusual punishment in the constitutional sense" *(supra,* at 697). Chief Judge Breitel, in dissent, characterized the defendant as one of at least nine millhands serving under the principal and three lieutenants, "a minor functionary, and perhaps an accidental one" in the drug-selling enterprise *(supra,* at 701). The majority did not dispute this characterization, but nevertheless refused to qualify the defendant's limited involvement or any other considerations as "exceptional circumstances which would justify a variance from this general rule" as set forth in *Broadie (supra,* at 697).

In *People v Donovan* (89 AD2d 968, *affd* 59 NY2d 834) the defendant, a single parent with three children, was dating a user and dealer of drugs who agreed to sell four ounces of cocaine to an undercover officer. The dealer asked the defendant to obtain the cocaine for him, and she did. There was conflicting testimony about the defendant's role, but it "seems to have been peripheral, since she simply made inquiries for her erstwhile boyfriend and acted as a courier for him in his attempt to obtain drugs" (89 AD2d, *supra,* at 971 [Mollen, P. J., dissenting]). The defendant was sentenced to prison for 15 years to life. Despite her peripheral role as a courier, the Court of Appeals, in affirming, held the sentence not to be cruel and unusual, citing *Broadie (supra), Jones (supra),* and United States Supreme Court decisions. If the defendants in *Jones* and *Donovan* were properly sentenced to 15 years to life, despite their limited involvement in the sales at issue there, the same sentence would plainly be appropriate for this defendant, despite her youth. *(See also, Bellavia v Fogg,* 613 F2d 369, where the driver of a car in which cocaine was hidden, who had retrieved it at the seller's request, was

properly sentenced to 15 years to life, despite what the dissent characterized [at 378, n 2] as the "strictly peripheral nature" of his participation.)

In the course of plea bargaining, the prosecutor offered defendant a sentence of three years to life imprisonment for a lesser crime, which she turned down. Thereafter, upon delivering sentence following verdict at trial, the court expressed concern with the disparity between the lenient prior offer and the statutory minimum of 15 years, to which she was now seemingly bound. But the Court of Appeals has held that a disparity of this type does not amount to cruel and unusual punishment, and therefore does not make it unconstitutional to impose the statutory term after trial *(People v Jones, supra)*. Notably, the defendants in *Jones* and *Donovan (supra)* each rejected similar plea offers of three years to life.

The majority suggests that when, as dissenting Judges, we apply law and settled precedent to defendant's case, and reject an attempt to rehabilitate such a young person, "we condemn ourselves as well." Without our pausing to inquire as to just which circle of Purgatory or worse is to be conjured up, we believe this observation calls for a response.

When a Judge is personally unhappy at the particular result dictated by a statute of general application passed by the elected representatives of the People, and signed into law by the Governor, it is a heady and seductive prospect to overturn that law in the name of the Constitution. How much more alluring is the invitation when that opportunity is cloaked in a penitential hairshirt styled on the order of Henry's at Canossa—ascetically threadbare on the outside, but providing a satisfyingly warm glow within. Yet deference to settled law, particularly by an intermediate appellate tribunal, is not an unworthy choice. That choice might well be closer to the Judge's basic oath of office, even if the Judge, perhaps bored by the limitations of the gavel, yearns to grasp at the sceptre of the supreme lawgiver and, incidentally, to avoid some inner pain, as well.

Ultimately, what is involved here is respect for our tripartite structure of government. The power to palliate an unfair sentence mandated by law is vested in the executive branch, as that is the forum that the law provides for reprieves and commutations (Executive Law § 15), the true nature of the relief sought here.

In this area, as in so many others, Cardozo provides the

luminous guide. As he wrote in The Nature of the Judicial Process (at 141 [Yale University Press 1921]), "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence."

Defendant should be remanded for resentence in compliance with law.

CARRO and ROSENBERGER, JJ., concur with ASCH, J.; SULLIVAN, J. P., and WALLACH, J., dissent in a separate opinion by WALLACH, J.

Judgment of the Supreme Court, New York County (Juanita Bing Newton, J.), rendered December 11, 1989, convicting defendant, after trial by jury, of criminal sale of a controlled substance in the first degree, and sentencing her to a term of eight years to life, is affirmed.