People v Copeland (2004 NY Slip Op 50332(U))

[*1]

People v Copeland

2004 NY Slip Op 50332(U)

Decided on April 23, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 23, 2004

Supreme Court, New York County
 THE PEOPLE OF THE STATE OF NEW YORK -
against
JOYCE COPELAND, Defendant.
SCI# 35/02

Laura A. Ward, J.
On February 1, 2002, the defendant pleaded guilty to Criminal Sale of a Controlled Substance in the Fifth Degree (Penal Law ["PL"] § 220.31) and was promised a sentence of imprisonment of two to four years. Prior to her sentencing, the defendant expressed her desire to be considered for the Drug Treatment Alternative to Prison ("DTAP") program, which would, among other things, require that the defendant enter into, and successfully complete, a residential drug treatment program. On September 25, 2002, the defendant entered into a Plea Agreement ("Agreement") in which the defendant agreed to participate in the DTAP program. The Agreement provided that if the defendant successfully completes the DTAP program, her case will be dismissed. (Agreement at ¶ 5) The Agreement also provided that should the defendant leave the drug treatment program without authorization and not voluntarily return to court, she would be sentenced to a period of incarceration of a least four to eight years. (Agreement at ¶ 3) Additionally, if the defendant elected to terminate treatment and voluntarily returned to court, she would be sentenced to a period of three to six years incarceration. (Agreement at ¶ 4) On September 12, 2003, the court was notified that the defendant had signed out of her residential drug treatment program and failed to return either to the drug treatment program or to court. The court ordered a bench warrant for the defendant and, on September 17, 2003, the defendant was involuntarily returned to court. On October 30, 2003, the defendant entered into a second Plea Agreement ("Agreement # 2") which was substantially similar to the first Agreement except for the fact that the new Plea Agreement provided for increased penalties. Pursuant to Agreement # 2, the defendant would receive a sentence of at least five to ten years incarceration if she left her drug treatment program without authorization and failed to voluntarily return to court. (Agreement # 2 at ¶ 3) If the defendant elected to terminate treatment and voluntarily returned to court, she would receive a sentence of incarceration of four to eight years. (Agreement # 2 at ¶ 4) On February 14, 2004, the defendant left her drug program. She voluntarily returned to court on February 17, 2004. The defendant now moves to dismiss the indictment or reduce her sentence in the interest of justice.
Criminal Procedure Law ("CPL") section 210.40 lists ten factors that must be [*2]examined and considered "individually and collectively" when a court is deciding a motion to dismiss a Superior Court Information in the interest of justice. Following examination and consideration of these factors, the court must determine whether, in its discretion, dismissal is required due to the existence of "some compelling factor, consideration, or circumstance clearly demonstrating that conviction or prosecution of the defendant ...would constitute injustice." In determining whether dismissal is appropriate in this case, the court has considered, individually and collectively, each of these factors:
(a) the seriousness and circumstances of the offense; and (b) the extent of harm caused by the offense
The defendant was charged with participating in the sale of crack cocaine to an undercover police officer. In People v. Brodie, 37 N.Y.2d 100,113 (1975), cert. denied, 423 U.S. 950 (1975), the Court of Appeals stated that "[m]easured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank. " (see also: People v. Thompson, 83 N.Y.2d 477 [1994]) In view of the fact the drug problem in this country has not decreased since the decisions in these two cases, the sale of drugs remain extremely serious. The sale and use of drugs affects not only the addict, but it also effects the addict's family, friends, and society as a whole.
(c) the evidence of guilt, whether admissible or inadmissible at trial 
 The defendant has pleaded guilty.
(d) the history, character and condition of the defendant 
 The defendant has a lengthy history with the criminal justice system, dating back to 1985, when she was 17 years old. In 1985, the defendant was adjudicated a youthful offender and she received a sentence of three years probation. The defendant violated that probation and, in 1987, was resentenced to a period of four months incarceration. The defendant was convicted of Criminal Possession of a Controlled Substance in the Seventh Degree (PL § 220.03), on ten separate occasions between 1986 and 1997. In 1989, she was convicted of Criminal Sale of a Controlled Substance in the Fourth Degree ( PL § 220.34). The defendant was convicted of Criminal Sale of a Controlled Substance in the Fifth Degree (PL § 220.31) in 1991 and in 2000. In 2000, the defendant was also convicted of Imitation Controlled Substances (Public Health Law § 3383).
(e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant
None is alleged.
(f) the purpose and effect of imposing upon the defendant a sentence authorized for the offence
Due to the fact that the sale and use of drugs has become an epidemic, and that the imposition of jail sentences has done little to alleviate the drug problem, society has sought to find methods which would work, not to punish the addict, but to reform the addict in order that [*3]he or she cease using drugs and thereby ultimately reduce future use and sale of drugs. The criminal justice system recognizes the difference between a defendant who sells drugs solely for profit and a defendant who engages in criminal activity to support his or her drug habit. Through the creation of drug courts throughout the country, society has recognized the benefits of successful drug treatment for defendants who engage in illegal activity to support their addiction. However, the defendant, given the opportunity to participate in a drug treatment program, chose to forgo completion of the program. The defendant therefore deprived herself of the full benefit of the program and in doing so, violated the requirements of the DTAP agreement, with full knowledge of the consequences of that decision. 

(g) the impact of dismissal on the safety or welfare of the community
Dismissal of the charges against the defendant could lead the defendant to believe that she could commit certain crimes, and not be punished and therefore continue to engage in criminal activity.
(h) the impact of dismissal upon the confidence of the public in the criminal justice system
 The public's confidence in the criminal justice system will be enhanced by denial of this motion to dismiss. The public will see that the courts take seriously their responsibility to assist in putting an end to an epidemic of illicit drugs that has swept the country. Additionally, the public will be aware that the courts will enforce an agreement made with a defendant, for the benefit of the defendant, when the defendant fails to fulfill his or her obligations pursuant to the agreement.
(i) the attitude of the victim or complainant with respect to the motion
No evidence relating to this factor has been provided.
(j) any other relevant fact indicating that a judgment of conviction would serve no useful purpose
The defendant was participating in a difficult drug treatment program. The defendant had worked very hard in an attempt to complete the program. However, the defendant chose to terminate her participation in the program with the full knowledge that she would be sentenced to a period of incarceration. The defendant asserts that she chose to leave the program due to personality conflicts with the prosecutor in charge of the DTAP program. The People dispute this claim, alleging that the defendant left the program, against clinical advice, following her refusal to cooperate with a routine search of her property. No matter what the basis was for the defendant's decision to leave the program, she did so without the permission of the court. The defendant, instead of leaving the program, should have brought her conflicts with the prosecutor to the court's attention in an attempt to rectify the conflict and continue with her treatment. The defendant was aware of the court's willingness to resolve disputes. When the defendant left the first program and failed to voluntarily return to court, she violated the Agreement and should have been sentenced pursuant to paragraph three of the Agreement. Rather than sentence the defendant, the court allowed her to enter into a second plea agreement with the hope that she would successfully complete a drug program and that her case would ultimately be dismissed.
[*4]
Upon reviewing the facts of this case and careful consideration of each of these ten factors, both individually and collectively, I am of the opinion that there exists no "compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant ... would constitute or result in injustice."
The motion to dismiss in the interest of justice is denied.
The motion to reduce the agreed upon sentence in the interest of justice is also denied. CPL § 210.40 allows a court to dismiss an indictment in the interest of justice. This section contains no provision for reducing a sentence in the interest of justice and there is no legal authority allowing a trial court to reduce a sentence in the interest of justice.
The defendant will sentenced in accordance with the terms of the second DTAP Plea Agreement.
The foregoing is the decision and order of the court.
Dated: New York, New York
April 23, 2004
 Laura A. Ward
 Acting Justice Supreme Court
Decision Date: April 23, 2004