*947 OPINION OF THE COURT
Nicholas Figueroa, J.
Defendant moves pursuant to CPL 440.20 to set aside his sentence on the ground that it constitutes cruel and unusual punishment. Alternatively, defendant seeks to modify his firearm conviction so that it not be deemed a violent offense. Following a jury trial, defendant was found guilty of criminal possession of a controlled substance in the first degree (Penal Law § 220.43 [1]) and criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]). On May 28, 1987, defendant was sentenced to 15 years to life on the narcotics conviction, and a concurrent term of one to three years on the weapons charge. Having served 11 years with an exemplary prison record, defendant contends the life sentence imposed for a first-time offender at age 19 constitutes “cruel and unusual” punishment under People v Broadie (37 NY2d 100 [1975]), given the unique circumstances of his particular case.
PROCEDURAL HISTORY
After imposition of the above sentence, defendant and his two codefendants, Jose Matos and Rafael Andujar, were granted standing to contest the warrantless apartment entry due to the intervening decision in People v Millan (69 NY2d 514 [1987]). A postconviction suppression hearing was held under CPL 440.10. An issue raised on the suppression motion concerned the lawfulness of the police officers’ warrantless entry into the apartment within which seven ounces of cocaine were recovered. On September 22, 1988, the trial court denied suppression, finding that the warrantless apartment entry was justified by exigent circumstances.
Defendant and his codefendants appealed the denial of their suppression motion. While one Appellate Division panel heard the appeal of defendant Andujar, a different panel heard the appeals of defendant and codefendant Matos. On April 17, 1990, the panels issued their respective decisions. Codefendant Andujar’s panel found the warrantless apartment entry illegal and accordingly vacated his conviction. (People v Andujar, 160 AD2d 403 [1st Dept 1990].) This finding was based on their factual interpretation of the radio run transmission as implying that someone had reported hearing shots in the vicinity, instead of inside the apartment. The panel hearing the appeals of defendant and codefendant Matos, however, reached a diametrically opposed interpretation. They found that a reasonable interpretation of the police radio run led to the conclusion *948 that the shots had come from inside the apartment, thereby justifying the officers’ warrantless entry under the exigent circumstances exception. Accordingly, defendant’s conviction was affirmed. (People v Matos, 160 AD2d 435, 437-438 [1st Dept 1990].)
In light of the reversal of codefendant Andujar’s conviction on the identical suppression issue, defendant’s Appellate Division panel granted him leave to reargue the denial of his suppression motion. On reargument, however, defendant’s panel adhered to its original decision and affirmed his conviction. On November 6, 1990, defendant’s application for leave to appeal was denied (People v Diaz, 76 NY2d 985 [1990]). On October 20, 1993, defendant’s habeas corpus petition filed in the United States District Court, Southern District of New York, was dismissed without prejudice on the ground that defendant had failed to exhaust State equal protection remedies (Diaz v Scully, 92 Civ 0499 [LBS]).
Accordingly, defendant and codefendant Matos moved for co-ram nobis relief based on denial of equal protection rights and ineffective assistance of counsel. Their motion was denied by the Appellate Division on May 26, 1994 (see, 204 AD2d 1082 [1st Dept 1994]). Application for leave to appeal was dismissed on June 14, 1994, by the Court of Appeals (People v Diaz, 83 NY2d 966 [1994]).
On December 1, 1995, the Federal District Court dismissed defendant’s second habeas corpus petition, which alleged Fourth Amendment and equal protection violations. On November 15, 1996, the United States Court of Appeals for the Second Circuit affirmed the District Court’s decision, finding defendant had a full and fair review of these issues in State court (Matos v Irvin, 104 F3d 353 [2d Cir 1996]).
ARGUMENT
Defendant’s Argument
Still incarcerated, defendant seeks to have his sentence set aside or modified, pursuant to People v Broadie (37 NY2d 100, supra, cert denied 423 US 950 [1975]) and its progeny. In the alternative, defendant seeks a modification of his firearm conviction to the extent that it not be designated a violent felony offense, in order to make him eligible for deportation to the Dominican Republic.
Defendant relies on the rationale underlying the Broadie decision (supra) in asking that his sentence of 15 years to life be *949 considered “cruel and unusual punishment” as grossly disproportionate to his offense, especially considering that the equally culpable codefendant Andujar’s case was dismissed. Notwithstanding that the Appellate Division found no violation of defendant’s equal protection rights, defendant argues this court should nonetheless consider the disparity of outcome a factor when applying the Broadie standard.
Defendant argues that after serving almost 12 years’ imprisonment, now is an opportune time, based on Broadie (supra), to examine the ramifications on him of the sentence imposed as contrasted with his criminal conduct. For instance, at the time of his arrest, he was 18 years old with no criminal background. Additionally, defendant urges the court to consider that he was not actively involved in a drug sale, and except for his presence in the apartment, there is no proof he was part of a drug ring. These Broadie factors were also considered and applied by the United States Supreme Court in Solem v Helm (463 US 277 [1983]), a case in which a mandatory sentencing law was struck down as cruel and unusual.
Furthermore, defendant stresses that although his conviction for possessing a handgun is statutorily designated a violent felony offense, his possession of the handgun was passive. Since the Broadie decision (supra) takes into account the danger an offender poses to society, he also submits that his dangerousness is minimal because upon release he is subject to immediate deportation to his communal roots in the Dominican Republic, where his family resides.
Lastly, defendant draws attention to his rehabilitation as evidenced by an excellent prison record, which includes enrollment in numerous educational courses and the receipt of various achievement awards, copies of which have been included in his motion papers. These include a high school diploma and completion of nonviolence and substance abuse programs, and his attainment of the position of facilitator in the nonviolence program at the Elmira Correctional Facility.
In further support of his contention that he comes under the Broadie rare case exception, defendant offers the recent and ongoing debate concerning the severity and efficacy of the so-called Rockefeller drug laws relative to first-time, nonviolent offenders such as himself, compared to more egregious criminality which is often treated less severely.
The Prosecution Counterargument
The People assert that the comparison with the disparate results in the Andujar decision (supra) should not be consid *950 ered, since this issue has been litigated previously, together with equal protection and Fourth Amendment arguments. There is no legal holding requiring that a benefit received by one defendant under a rule of law also be awarded to a similarly situated defendant. Moreover, the prosecution asserts that any controversy involving the Rockefeller drug laws is irrelevant and that no authority exists for taking public opinion into consideration in reassessing sentences. The People point out that there is no basis for a declaration that criminal possession of a loaded .38 revolver outside the home or business should not be considered a violent felony. Lastly, the People claim that defendant’s rehabilitation and accomplishments may be disingenuously motivated by his desire to be released. Furthermore, no authority exists for the courts to monitor inmates’ achievements for the purpose of amending legally imposed sentences.
DISCUSSION
Defendant by his motion forces the court to confront a situation, the equivalent of which may never arise again. After one panel of the Appellate Division, First Department, construed the 911 call as indicating that gunshots emanated from outside the apartment, and reversed codefendant Andujar’s conviction, a different panel reached the opposite conclusion and ruled against defendant, when his appellate counsel did not emphasize this issue. The anomalous result was that defendant began serving 15 years’ imprisonment, while his codefendant Andujar, equally culpable, was released.
This unique appellate result was underscored in an article by Daniel Wise in the New York Law Journal (NYLJ, May 7, 1990, at 1, col 5), entitled First Department Fail-Safe Measures in Contradictory Decisions in Criminal Case. The articles quotes Presiding Justice Francis T. Murphy of the First Department, as saying: “ With all the safeguards we have built into the system, this should not have happened * * * This is the one-in-a-million case that eluded us. It has never happened before and I doubt it will ever happen again.’ ” (Ibid.)
The law by its nature invites comparisons. Defendant offers comparison with his codefendant asking the court to redress what he considers the apparent anomaly of his incarceration. Aside from comparing his fate with that of codefendant Andujar, he states that but for the firearm found on his person, which categorized him as a violent felony offender, he would *951 currently be eligible for deportation. Defendant claims his punishment compared to the release of his equally culpable co-defendant heightens his contention that his sentence was grossly disproportionate and consequently cruel and unusual.
CPL 440.20 authorizes the court to set aside a sentence imposed upon the ground that it was unauthorized, illegally imposed or otherwise invalid according to law. A motion seeking relief under the Broadie / Solem doctrine appropriately utilizes this section, since the imposition of cruel and unusual punishment has the effect of rendering a sentence unconstitutional,[1] and thus illegally imposed. Therefore, a decision setting aside the sentence under the Broadie line of cases does not constitute a discretionary modification of sentence in the interests of justice. Instead, the Broadie test involves the application of specific factors that the United States Supreme Court, and the New York Court of Appeals have decided are cogent as to whether a sentence constitutes cruel and unusual punishment. If these Broadie 1 Solem factors are satisfied, a constitutional violation exists and mandates that the court hearing the motion set aside the sentence.
In Broadie (supra), the Court of Appeals recognized that cruel and unusual punishment was applicable to New York State’s drug laws, and set forth the test to determine whether a sentence is “grossly disproportionate”, and thus constitutes “cruel and unusual” punishment. The Broadie case considered the appeals of eight defendants convicted of various drug offenses, relative to whether these sentences were grossly disproportionate to their crimes and therefore constituted cruel and unusual punishment. Although rejecting this concept as inapplicable to the eight cases before it, the Court (People v Broadie, 37 NY2d, supra, at 119) held that in “some rare case on its particular facts it may be found that the statutes have been unconstitutionally applied”.
This principle has been applied in numerous cases by the United States Supreme Court to overturn statutorily imposed punishments. (Enmund v Florida, 458 US 782 [1982]; Coker v Georgia, 433 US 584 [1977]; Solem v Helm, 463 US 277, supra.) Broadie (supra) embraced an objective rather than a subjective, “shocks the conscience” test, by focusing on three prongs: the gravity of the offense, the character of the offender, and the danger the offender poses to society. The Broadie Court found pertinent whether the defendants were street sellers not only *952 under the statutory presumption (based on possession of a large amount of narcotics), but in the “narrower, literal sense as well.” (People v Broadie, supra, at 114.) A determination of “cruel and unusual” punishment was absent, but Broadie nevertheless acknowledged that in some “rare case on its particular facts” the statutes may be found to be unconstitutionally applied (People v Broadie, supra, at 119). The “rare case” exception was acknowledged in People v Santos (197 AD2d 378 [1st Dept 1993]), where the Court concluded that defendant’s situation was not a “rare case” under Broadie.
While there is no gainsaying the prosecution’s contention that the legality of defendant’s sentence has already been litigated and is therefore res judicata, the fact remains that the Appellate Division merely determined that defendant’s equal protection and Fourth Amendment rights had not been violated. The issue of “cruel and unusual” punishment, however, was never raised, and the issue of defendants’ disparate treatment is now raised in a completely different context as a Broadie factor, rather than as an equal protection argument.
The prosecution further contends the law does not take disparate treatment into account in the application of the Broadie /Solem test. This is not wholly accurate. In People v Thompson (83 NY2d 477 [1994]), the Court of Appeals compared defendant’s punishment to the sentence her uncle received,[2] finding that even though her uncle may have merited a more severe sentence than defendant there was no gross dis-proportionality. Comparative treatment of codefendants was therefore weighed as a factor in determining gross disproportionality. Moreover, in the instant case, defendant’s and codefendant Andujar’s disparate outcomes were certainly more extreme and more disproportionate than that contemplated by the Court in Thompson.
The current debate over the severity of the Rockefeller drug laws is not, as the prosecutor correctly contends, a factor in applying the Broadie test. However, this law’s impact was deemed relevant and worthy of exploration by the Court of Appeals in Broadie and Thompson (supra), because society’s perception of justice is always relevant, and our citizens have the right to expect judicial outcomes to be reasonable and uniform.
*953 Although not forming the basis for the instant decision, this court nonetheless finds persuasive defendant’s argument that the evolution of penological theory involving the “Rockefeller Laws” has drastically changed course, as typified by the alternative sentencing choices provided by the Sentencing Reform Act of 1995 (L 1995, ch 3), which permits even second felony offenders to receive a “parole supervision sentence”. The fact is that this permits even inmates serving a State sentence or predicate felons to be paroled into a day treatment program. This Sentencing Reform Act is merely one example indicating the changed view of the “Rockefeller Laws” under which defendant was sentenced.
Along similar lines, defendant draws attention to the comprehensive alcohol and substance abuse treatment program which permits nonviolent offenders who are predicate felons to be released within 30 months to their earliest possible release date into a parole supervision sentence. Additionally, defendant points out that the New York County Lawyers’ Association set forth in their findings in the “Report and Recommendations of the Drug Policy Task Force” alternatives to incarceration programs and, most pertinently, sentencing relief for nonviolent felony offenders, while advocating the repeal of the “draconian” Rockefeller Laws. There have also been other studies advocating similar relief.
More important, however, is how the defendant measures up when evaluated under the three-pronged test of Broadie (supra). The gravity of the offense comprises the first prong. From that perspective, both of defendant’s offenses in the instant case are undoubtedly serious, and of the type contemplated by drafters of the sentencing statute. Recent cases, however, such as People v Dowd (140 Misc 2d 436 [1988]), indicate that it may be appropriate to examine the seriousness of the offense against the backdrop of defendant’s rehabilitation as a factor in deciding a CPL 440.20 application, thereby giving the character of the offender increased weight. Defendant’s rehabilitation as evidenced by the numerous certificates and achievement awards submitted on his behalf indicate his rehabilitation is genuine.
The character of the offender constitutes the second prong of the Broadie test. Defendant was not a career criminal. On the contrary, at 18, this was his first arrest. He is the type of offender categorized by the Court of Appeals in Thompson (supra) as an “accidental offender” or a “millhand”. No evidence exists that he was an integral part of a drug ring. He did not sell *954 drugs, as the defendant did in Thompson, or physically commit any violent acts, which the Court of Appeals suggests is a significant factor. In fact, although defendant was in possession of a gun, when the police entered the apartment, he neither resisted arrest nor threatened the use of the weapon.
The danger the offender poses to society is the third prong of the test. The character of the defendant and the circumstances of his offense tend to show little risk of danger to society. This is especially true since defendant upon release would be deported to the Dominican Republic.
Defendant when assessed relative to the three Broadie categories comes out well. Moreover, the following cases illustrate that the Broadie doctrine involving cruel and unusual punishments has been applied to cases in which defendants were charged with comparable serious offenses:
A case strikingly similar to defendant’s is People v Skeffery (188 AD2d 438 [1st Dept 1992]), where concurrent sentences of 15 years to life and one year respectively for criminal possession of a controlled substance in the first degree and bail jumping were reduced to five years to life by the Appellate Division, based on defendant’s disparate sentence compared with that of the freed codefendant. The Court’s rationale was fully explained as follows: “While a sentence within the statutory limits ordinarily is not a cruel and unusual punishment (People v Jones, 39 NY2d 694, 697), ‘in some rare case[s]’ the statute can be unconstitutionally applied (People v Broadie, 37 NY2d 100, 119, cert denied 423 US 950). Noting the disparity of treatment arising from co-defendant’s acquittal at a separate trial based upon testimony that exculpated both, and lack of criminal record, age, poor health, and family circumstances, we reduce the sentence to 5 years to life to avoid the sentence being ‘cruel and unusual’ in the circumstances (NY Const, art I, § 5; see, People v Andrews, 176 AD2d 530, 531-532, Iv denied 79 NY2d 918).” (People v Skeffery, supra, at 189.)
But Skeffery (supra) is not alone in finding that a mandatory sentence was unconstitutionally applied on “cruel and unusual punishment” grounds. For instance, in People v Dowd (supra), defendant was sentenced to two to six years for robbery in the first degree. Defendant appealed unsuccessfully and his case was remanded for execution of sentence. Defendant made a CPL 440.20 motion to have the sentencing provisions of Penal Law § 70.00 declared unconstitutional as applied to him. The court hearing the motion agreed, and found the mandatory incarceration “cruel and unusual punishment” as grossly *955 disproportionate to the crime. The court took notice that no one had been physically harmed, and defendant had demonstrated significant rehabilitation after conviction. Similarly to the instant defendant, he was pursuing education, and presented little danger to society.
These factors were assessed, although with different final results, in People v Rivera (128 Mise 2d 593 [1985]), where defendant was convicted of criminal possession of a weapon in the third degree and was sentenced to an indeterminate period of imprisonment of two to four years. The case was remanded after appeal for execution of sentence and defendant then moved to set aside the sentence, citing Broadie (supra). The court hearing the motion held the statutory mandated sentence constituted “cruel and unusual” punishment and modified it to five years’ probation. The Appellate Division reversed (119 AD2d 705 [2d Dept 1986]), finding that the fact the 49-year-old defendant had avoided confrontations with the police for some nine years before his conviction, and had developed into a “family man”, was insufficient to find the two-to-four-year sentence to be the “rare case” needed under Broadie. Notwithstanding the outcome, it is significant that the Broadie “rare case” factors were considered.
Finally, modifications of sentence have been granted in the Appellate Division’s discretion to far more serious offenders. While such relief was not granted under Broadie (supra), and thus not the basis of the instant decision, it is nevertheless noteworthy that rehabilitative efforts have been given great weight by New York State courts. For instance, in People v Hiemel (49 AD2d 769 [2d Dept 1975]), the Appellate Division reviewed the 30-years-to-life sentence of a man who pleaded guilty to murder at the age of 16. Based on defendant’s commendable record and educational achievements while imprisoned, defendant’s sentence was reduced to 20 years to life. The Court found that, based on defendant’s rehabilitation, “ There is nothing to be gained by his continued incarceration.’ ” {Supra, at 770.) As a matter of discretion in the interests of justice, the Appellate Division reduced defendant’s minimum sentence to enable him to appear before the parole board. Similarly, in People v Chen (176 AD2d 628 [1st Dept 1991]), defendant was sentenced to seven years to life for sale of a controlled substance in the second degree. The Appellate Division, in view of defendant’s outstanding academic success, his model behavior as a prisoner, and significant progress in rehabilitation from alcohol and substance abuse, reduced his sentence to *956 five years, thereby accelerating his appearance before the parole board.
CPL 440.20 authorizes setting aside a sentence which is unauthorized, illegally imposed, or otherwise invalid according to law. Accordingly, a constitutional violation under the aegis of “cruel and unusual punishment” would constitute an illegally imposed sentence. Since the original sentencing Judge is no longer available to rule on this instant CPL 440.20 motion, it falls upon this court to do so. Accordingly, this court opines that should a Broadie “rare case” be found, setting aside the sentence would be the appropriate relief, and the court must resentence the defendant under CPL 440.20 (4).
Most persuasive in showing that defendant’s disparate result is offensive to fundamental principles of our jurisprudence is People v Laffman (161 AD2d 111 [1st Dept 1990]). There the Court of Appeals granted the application to appeal of codefendant Rodriguez but denied that of Laffman. Defendant’s case was remanded to allow the decision in his codefendant’s case to be applied retroactively to Laffman. In their decision reversing and remanding with directions, the Court commented “The alternative would be to countenance the radically disparate treatment by courts of persons similarly, indeed, as here, identically, situated in matters upon which a determination of guilt or innocence may vitally depend. That is an alternative which we decline to embrace”. (Supra, at 113.) While the equal protection and Fourth Amendment issues have already been adjudicated, the aforementioned cases establish a rationale for consideration of disparate treatment as a Broadie factor, thereby permitting relief in the instant case.
DECISION
This court finds that defendant’s original sentence was “grossly disproportionate” as applied to him and thus was constitutionally prohibited as “cruel and unusual punishment” given the disparate treatment of the codefendant Andujar, the nature of the offense, and the lack of physical violence. Also considered in this decision is defendant’s age at the time of the offense, the absence of an arrest record, defendant’s family circumstances, and the fact that defendant did not engage in a sale of drugs. While each of these factors alone would not suffice to make the sentence grossly disproportionate, by their cumulative weight and effect, they are substantial. Defendant’s rehabilitation record, as demonstrated by his enrollment and completion of various programs, although not a Broadie factor, *957 is duly noted by this court. Although the law is unsettled as to whether defendant’s postconviction rehabilitation should be considered as a factor in a CPL 440.20 motion, it merely enhances the convincing nature of defendant’s argument.
Defendant has been incarcerated for almost 12 years. This court has carefully considered the gravity of the offense and the character of the offender, and finds that defendant poses little risk to society. The defendant having appeared personally before the court, and the parties having been heard, it is felt that no penological or societal interest would be served in defendant’s continued incarceration.
Under Broadie (supra) and the previously cited authority, and for the reasons set forth above, defendant’s continued incarceration pursuant to his original sentence of 15 years to life is found to constitute a violation of his constitutional right against “cruel and unusual punishment”. This is one of those unique circumstances which suits the Broadie rare case exception.[3] The circumstances of defendant’s case are among the rarest. Consequently, defendant’s motion setting aside his sentence is granted, and he is resentenced to 10 years to life. In this instance, it is the right thing to do.

. US Const Eighth Amend; NY Const, art I, § 5.

. In Thompson, defendant and her uncle were both sentenced to 15 years to life. Defendant, who was only 17 years old, was influenced by her uncle. She was convicted of selling 200 vials of cocaine to an undercover officer for $2,000. The Court, however, viewed her conduct in haggling with the ofiicer over bonus vials as being inconsistent with that of an “accidental offender”.

. Defense counsel also argued in the alternative that the application should be granted in the interests of justice pursuant to People v Clayton (41 AD2d 204 [1973]) and cases following that holding. However, review of the case law cited by defense counsel, as well as the wording of CPL 210.40, restricts discretion to dismiss the indictment up to the time sentence has been imposed. (People v Weaver, 112 AD2d 782 [1985].) Accordingly, Clayton is inapplicable.