OPINION OF THE COURT
John J. Connell, J.
The defendant has made a motion pursuant to CPL 440.20 for a reversal or a reduction of his sentence claiming the sentence was illegally imposed or otherwise invalid as a matter of law due to its harshness and excessiveness, and so grossly disproportionate to his offense that it constitutes cruel and unusual punishment.
The People have opposed the defendant’s application on the grounds that the defendant is not presently amenable to the jurisdiction of the court and, in any event, the sentence received by the defendant is not cruel and unusual punishment.
In June 1970, the defendant, then known as Christopher Perlstein, was arrested for selling $20 worth of LSD to an undercover police officer while a student at Rochester Institute of Technology (R.I.T.). In March of 1971 a jury convicted him of criminal sale of a dangerous drug in the fourth degree, which was a class D felony. The permissible sentences for that crime included an indeterminate term of incarceration with the New York State Department of Correctional Services of up to seven years, a five-year sentence of probation, or a definite sentence of up to one year in the Monroe County Jail. On March 26, 1971 the defendant was sentenced to an indeterminate term of zero to four years. The defendant appealed from that judgment and conviction, and on June 25, 1971 the Appellate Division, Fourth Department, unanimously affirmed the judgment (People v Perlstein, 37 AD2d 694).
In submitting this factually unusual application, the defendant asks us to turn the clock back to the turbulent 60’s and 70’s in this country. He asks us to view his actions through the prism of campus turmoil over the Vietnam War and student drug experimentation. He portrays himself as a suburban college student who actively took part in campus demonstrations *847 against the war and engaged in “recreational drug use in the dormitories of R.I.T.” (Defendant’s affidavit, at 2.)
After being convicted and sentenced to the Department of Correctional Services, he found himself assigned to Attica. A contributing factor to his receiving a State prison sentence, he asserts, was the R.I.T. Dean’s opinion that he had “nothing but contempt for the defendant who assumed a very vocal and foulmouthed role during the spring demonstrations as a result of the trouble at Kent State.” Although that observation was contained in the defendant’s presentence report, so was the defendant’s that “while at R.I.T. he bought and sold drugs somewhat indiscriminately both from fellow students and outside sources.”
After a short time at Attica the defendant was transferred to a prison work facility, Camp Georgetown. Within a short time of his transfer, the violent Attica uprising occurred, leaving 43 people dead. Shortly thereafter, according to the defendant, a guard at Camp Georgetown informed him that he was being returned to Attica where “they knew how to deal with people like” him. It was against this backdrop, the defendant claims, that he escaped and fled to Canada.
The defendant now describes himself as a hard-working and respected resident of Vancouver, British Columbia, caretaker to his ill wife and an active member in several worthwhile community organizations. In view of the achievements he has made in his personal life since his escape, the defendant asks that his sentence be vacated and that he be allowed to remain in Canada.
Pending determination of his illegal stay in Canada, the defendant seeks refugee status in that country. He has not personally appeared in this court on this application. He has chosen to remain in Canada during these proceedings to assist his ailing wife, to avoid arrest by New York authorities should he cross the border, and to avoid the difficulty he would experience should he try to re-enter Canada. However, he assures us that if this court rules against him he will réturn to New York and serve out his sentence.
Having determined that this court has discretion to entertain the defendant’s application, this court will assume jurisdiction under the unique circumstances that cause the defendant to remain in Canada at this point.
It is important to note that this court must determine whether the sentence imposed in 1971 was a lawful and ap *848 propriate sentence at that time, not what sentence should be imposed today for a person in the present circumstances of the defendant.
That being said, it is clear that the sentence imposed of zero to four years with the Department of Correctional Services was not “cruel and unusual punishment” (People v Broadie, 37 NY2d 100 [1975], cert denied 423 US 950 [1975]). The sentencing Judge had options available to impose a more severe sentence as well as a less severe sentence than he did.
A review of the presentence report provided to the Judge in 1971 clearly justifies the sentence imposed. The defendant acknowledged repeatedly selling drugs at R.I.T. He expressed no remorse for his offense and, indeed, expressed surprise that the undercover officer was able to successfully purchase LSD from him since the defendant’s practice was to limit his sales to student acquaintances. “He expressed the mild regret that perhaps he should be censured to some degree for tempting and persuading other students who might not otherwise have become interested in narcotics.” (Presentence report, at 4-5.)
Experience shows that a sentence of zero to four years at that time usually resulted in a period of actual incarceration of no more that 12 to 18 months with the balance of the four years requiring out-of-custody parole supervision.
At the time sentence was imposed there could have been no reasonable expectation by the court that the defendant would be permanently assigned to the Attica Correctional Facility. Nor is there any indication that either the court or the Department of Correctional Services was intent on singling out the defendant for extreme punishment, as the defendant claims.
As a matter of fact, there is much to suggest the opposite. The sentence given was far less than the maximum sentence that could have been imposed (2⅓-7 years). He was assigned to a minimum security work camp within a short time of his placement at Attica. The brief time at Attica is consistent with the evaluation period that the Department of Correctional Services used then, as now, to determine to what type of facility an inmate should be assigned. In the defendant’s case, that evaluation resulted in his being assigned to a minimum security facility. The Department of Correctional Services’ failure to secure an arrest warrant or sealed indictment for escape charges is also evidence of its lack of single-minded vindictiveness as alleged by the defendant.
The guard’s statement, if actually made, that the defendant would be returned to Attica did not necessarily mean that such *849 a transfer was actually intended or even considered by the Department of Correctional Services. While this court will assume for purposes of this application that the defendant believed he was going to be sent back to Attica, it certainly does not justify his escape from custody. To send that message to the inmate population of this State would pose serious safety issues for correction officers, inmates, and the general public.
In support of his application, the defendant points to many positive changes that have occurred in his life which are proof of his rehabilitation. Sentencing, however, strives for more than just rehabilitation goals. It forbids conduct which poses a threat to society; it gives fair warning of the nature of that forbidden conduct as well as the penalties that may be imposed upon conviction; it defines the mental states that accompany those crimes; it provides for appropriate public response which takes into consideration the victims and the community; it insures public safety by acting as a deterrent to others who would commit those offenses; and it provides confinement of those from whom the public needs protection (Penal Law § 1.05).
From all accounts the defendant is now a responsible and respectful member of his community. He is admired in his profession, for his community endeavors, and in his family relationships. The respect that he has gained in his community demonstrates that the usual goals of rehabilitation have been achieved in his case.
However, being the responsible citizen he portrays himself to be, the defendant must realize the importance of taking personal responsibility for his actions. Had there not been a tip provided to Canadian authorities, it is unlikely that the defendant would have come forward on his own to face his past. As understandable as his reluctance may have been, it is important that those past obligations now be confronted.
Respect for the law is grounded in a belief that it will be evenhandedly applied. The status of an accused, the wealth of an accused, the profession of an accused, the education of an accused, or the lack of those attributes cannot solely dictate what sentences will be imposed for crimes committed.
The message that the defendant asks this court to send to the community is: “If you escape from prison and rehabilitate yourself over a period of years, you can escape a lawfully imposed sentence.” If this court grants the defendant’s application, how then should courts deal with future escapees? If you are captured within five years, your sentence stands? If you *850 are captured within 10 years but haven’t completed your education or secured a prestigious job, your sentence stands? If you are captured within 20 years but you don’t have the wherewithal intellectually, financially, or socially to attain respected social status, your sentence stands? Evenhanded treatment and, therefore, respect for the law in such circumstances would be diminished and increase the potential for obvious injustices. Neither the courts nor the public could rely on the finality of lawfully adjudicated criminal cases. In short, both the reality and the perception of justice would gravely suffer.
This is not an easy decision for this court to render or this defendant to comply with. Decisions requiring us to take personal responsibility for our actions and for our roles rarely are the easiest decisions to make. They frequently are the most important ones though. This court does not have the authority to modify the sentence imposed since it was a lawful sentence and did not constitute cruel and unusual punishment. Commutation of the defendant’s sentence does not reside within the powers of the judicial branch of government.
Accordingly, the defendant’s motion is, in all respects, denied.