[54 NYS3d 392]

In the Matter of NONHUMAN RIGHTS PROJECT, INC., on Behalf of TOMMY, Appellant, v PATRICK C. LAVERY et al., Respondents.

In the Matter of NONHUMAN RIGHTS PROJECT, INC., on Behalf of KIKO, Appellant, v CARMEN PRESTI et al., Respondents.

First Department, June 8, 2017

## APPEARANCES OF COUNSEL

*Law Office of Elizabeth Stein*, New Hyde Park (*Elizabeth Stein* of counsel), and *Steven M. Wise*, of the Massachusetts bar, admitted pro hac vice, of counsel, for appellant.

*Justin Marceau*, Denver, Colorado, amicus curiae pro se.

*Samuel R. Wiseman*, Tallahasse, Florida, amicus curiae pro se.

*Laurence H. Tribe*, Cambridge, Massachusetts, amicus curiae pro se.

*Richard L. Cupp, Jr.*, Malibu, California, amicus curiae pro se.

## OPINION OF THE COURT

WEBBER, J.

Petitioner seeks reversal of the motion court's judgment declining to extend habeas corpus relief to two adult male chimpanzees, Tommy and Kiko.

Petitioner is a Massachusetts nonprofit corporation whose stated mission is "to change the common-law status of at least some nonhuman animals from mere 'things,' which lack the capacity to possess any legal rights, to 'persons,' who possess such fundamental rights as bodily integrity and bodily liberty, and those other legal rights to which evolving standards of morality, scientific discovery, and human experience entitle them"

to—certain fundamental rights which include entitlement to habeas relief.*

The petition as to Tommy was brought in December 2015. It is alleged that Tommy, who is owned by respondents Circle L Trailer Sales, Inc. and its officers, is in a cage in a warehouse in Gloversville, New York. The petition as to Kiko was brought in January 2016. Kiko, who is owned by respondents the Primate Sanctuary, Inc. and its officers and directors, is allegedly in a cage in a cement storefront in a crowded residential area in Niagara Falls, New York.

These are not the first petitions for habeas relief filed by petitioner on behalf of Tommy and Kiko. In December 2013, petitioner filed a petition on behalf of Kiko, in Supreme Court, Niagara County. There, the trial court declined to sign an order to show cause seeking habeas relief and the Fourth Department affirmed (*Matter of Nonhuman Rights Project, Inc. v Presti*, 124 AD3d 1334 [4th Dept 2015], *lv denied* 26 NY3d 901 [2015]).

Also in December 2013, petitioner brought a habeas proceeding on behalf of Tommy, in Supreme Court, Fulton County. There, the trial court declined to sign an order to show cause and the Third Department affirmed the decision (*People ex rel. Nonhuman Rights Project, Inc. v Lavery*, 124 AD3d 148 [3d Dept 2014], *lv denied* 26 NY3d 902 [2015]).

Petitioner has also brought a habeas petition seeking the release of two chimpanzees not at issue here, Hercules and Leo, who, according to petitioner are confined for research purposes, at the State University of New York at Stony Brook. In that proceeding, Supreme Court, Suffolk County, declined to sign an order to show cause and in 2014, the Second Department dismissed petitioner's appeal (*Matter of Nonhuman Rights Project, Inc. v Stanley*, 2014 NY Slip Op 68434[U] [2d Dept 2014]).

Without even addressing the merits of petitioner's arguments, we find that the motion court properly declined to sign the orders to show cause since these were successive habeas proceedings which were not warranted or supported by any changed circumstances (*see People ex rel. Glendening v Glendening*, 259 App Div 384, 387 [1st Dept 1940], *affd* 284 NY 598

---

* Assuming habeas relief may be sought on behalf of a chimpanzee, petitioner undisputedly has standing pursuant to CPLR 7002 (a), which authorizes anyone to seek habeas relief on behalf of a detainee.

[1940]; *People ex rel. Woodard v Berry*, 163 AD2d 759 [3d Dept 1990], *lv denied* 76 NY2d 712, 715 [1990]; *see also People ex rel. Lawrence v Brady*, 56 NY 182, 192 [1874]).

CPLR 7003 (b) permits a court to decline to issue a writ of habeas corpus if

> "the legality of the detention has been determined by a court of the state on a prior proceeding for a writ of habeas corpus and the petition presents no ground not theretofore presented and determined and the court is satisfied that the ends of justice will not be served by granting it."

Petitioner has filed four identical petitions in four separate state courts in four different counties in New York. Each petition was accompanied by virtually the same affidavits, all attesting to the fact that chimpanzees are intelligent, and have the ability to be trained by humans to be obedient to rules, and to fulfill certain duties and responsibilities. Petitioner has failed to present any new information or new ground not previously considered. The "new" expert testimony presented by petitioner continues to support its basic position that chimpanzees exhibit many of the same social, cognitive and linguistic capabilities as humans and therefore should be afforded some of the same fundamental rights as humans.

Any new expert testimony/affidavits cannot be said to be in response to or counter to the reasoning underlying the decision of the Court in *People ex rel. Nonhuman Rights Project, Inc. v Lavery* (124 AD3d at 148). In declining to extend habeas relief to chimpanzees, the Court in *Lavery* did not dispute the cognitive or social capabilities of chimpanzees. Nor, did it, as argued by petitioner, take judicial notice that chimpanzees cannot bear duties and responsibilities. Rather, it concluded:

> "[U]nlike human beings, chimpanzees cannot bear any legal duties, submit to societal responsibilities or be held legally accountable for their actions. In our view, it is this incapability to bear any legal responsibilities and societal duties that renders it inappropriate to confer upon chimpanzees the legal rights—such as the fundamental right to liberty protected by the writ of habeas corpus—that have been afforded to human beings" (*id.* at 152).

The gravamen of petitioner's argument that chimpanzees are entitled to habeas relief is that the human-like characteris-

tics of chimpanzees render them "persons" for purposes of CPLR article 70. This position is without legal support or legal precedent.

In support of its argument, petitioner submits several expert affidavits, including one by Dr. Jane Goodall, the well-known primatologist, purportedly showing, based on academic research and hands-on experience, that chimpanzees have many human-like capabilities. These include recognizing themselves in reflections; setting and acting toward goals such as obtaining food; undergoing cognitive development with brains having similar structures to those of humans; communicating about events in the past and their intentions for the future, such as by pointing or using sign language; exhibiting an awareness of others' different visual perspectives, such as by taking food only when it is out of their competitors' line of sight; protecting others in risky situations, such as when relatively strong chimpanzees will examine a road before guarding more vulnerable chimpanzees as they cross the road; deceiving others (implying that they are able to anticipate others' thoughts); making and using complex tools for hygiene, socializing, communicating, hunting, gathering, and fighting; counting and ordering items using numbers; engaging in moral behavior, such as choosing to make fair offers and ostracizing chimpanzees who violate social norms; engaging in collective behavior such as hunting in groups of chimpanzees adopting different roles; showing concern for the welfare of others, particularly their offspring, siblings, and even orphans they adopt; protecting territory and group security; resolving conflicts; and apologizing.

"The common law writ of habeas corpus, as codified by CPLR article 70, provides a summary procedure by which a 'person' who has been illegally imprisoned or otherwise restrained in his or her liberty can challenge the legality of the detention" (*id.* at 150, quoting CPLR 7002 [a]). While the word "person" is not defined in the statute, there is no support for the conclusion that the definition includes nonhumans, i.e., chimpanzees. While petitioner's cited studies attest to the intelligence and social capabilities of chimpanzees, petitioner does not cite any sources indicating that the United States or New York Constitutions were intended to protect nonhuman animals' rights to liberty, or that the legislature intended the term "person" in CPLR article 70 to expand the availability of habeas protection beyond humans. No precedent exists, under

New York law, or English common law, for a finding that a chimpanzee could be considered a "person" and entitled to habeas relief. In fact, habeas relief has never been found applicable to any animal (*see e.g. United States v Mett*, 65 F3d 1531 [9th Cir 1995], *cert denied* 519 US 870 [1996]; *Waste Mgt. of Wisconsin, Inc. v Fokakis*, 614 F2d 138 [7th Cir 1980], *cert denied* 449 US 1060 [1980]; *Sisquoc Ranch Co. v Roth*, 153 F2d 437, 441 [9th Cir 1946]).

The asserted cognitive and linguistic capabilities of chimpanzees do not translate to a chimpanzee's capacity or ability, like humans, to bear legal duties, or to be held legally accountable for their actions. Petitioner does not suggest that any chimpanzee charged with a crime in New York could be deemed fit to proceed, i.e., to have the "capacity to understand the proceedings against him or to assist in his own defense" (CPL 730.10 [1]). While in an amicus brief filed by Professor Laurence H. Tribe of Harvard Law School, it is suggested that it is possible to impose legal duties on nonhuman animals, noting the "long history, mainly from the medieval and early modern periods, of animals being tried for offenses such as attacking human beings and eating crops," none of the cases cited took place in modern times or in New York. Moreover, as noted in an amicus brief submitted by Professor Richard Cupp, nonhumans lack sufficient responsibility to have any legal standing, which, according to Cupp is why even chimpanzees who have caused death or serious injury to human beings have not been prosecuted.

Petitioner argues that the ability to acknowledge a legal duty or legal responsibility should not be determinative of entitlement to habeas relief, since, for example, infants cannot comprehend that they owe duties or responsibilities and a comatose person lacks sentience, yet both have legal rights. This argument ignores the fact that these are still human beings, members of the human community.

Similarly, petitioner's argument that the word "person" is simply a legal term of art is without merit. As evidence, petitioner points to the doctrine of corporate personhood. In support of this argument, petitioner cites *Santa Clara County v Southern Pacific R. Co.* (118 US 394 [1886]), where the United States Supreme Court reaffirmed that a corporation is a person for purposes of the Fourteenth Amendment and, thus, its property cannot be taxed differently from the property of individuals. The underlying reasoning was that the corporation's prop-

erty was really just the property of the individual shareholders who owned the corporation, and therefore should be protected in the same manner. Again, an acknowledgment that such laws are referenced to humans or individuals in a human community.

Petitioner's additional argument that "person" need not mean "human," as evidenced by a river in New Zealand designated as a legal person owning its own riverbed pursuant to a public agreement with indigenous peoples of New Zealand and pre-independence Indian court decisions recognizing various sacred entities as legal persons, is not relevant to the definition of "person" here in the United States and certainly is of no guidance to the entitlement of habeas relief by nonhumans in New York.

Even assuming, however, that habeas relief is potentially available to chimpanzees, the common-law writ of habeas corpus does not lie on behalf of the two chimpanzees at issue in these proceedings. Petitioner does not seek the immediate production of Kiko and Tommy to the court or their placement in a temporary home, since petitioner contends that "there are no adequate facilities to house [them] in proximity to the [c]ourt." Instead, petitioner requests that respondents be ordered to show "why [the chimpanzees] should not be discharged, and thereafter, [the court] make a determination that [their] detention is unlawful and order [their] immediate release to an appropriate primate sanctuary." Petitioner submits an affidavit from the executive director of Save the Chimps stating that this organization agrees to provide a permanent sanctuary to any and all chimpanzees released by court order. Save the Chimps maintains that the warm, humid climate in southern Florida is "ideal for chimpanzees," as it is similar to the species' native Africa.

Since petitioner does not challenge the legality of the chimpanzees' detention, but merely seeks their transfer to a different facility, habeas relief was properly denied by the motion court (see Matter of Nonhuman Rights Project, Inc. v Presti, 124 AD3d at 1334; compare People ex rel. Dawson v Smith, 69 NY2d 689 [1986], with People ex rel. Brown v Johnston, 9 NY2d 482 [1961]).

Seeking transfer of Kiko and Tommy to a facility petitioner asserts is more suited to chimpanzees as opposed to challenging the illegal detention of Kiko and Tommy does not state a cognizable habeas claim. Petitioner's reliance upon Brown v

*Johnston* (9 NY2d at 482) as standing for an opposite result is misplaced. In *Brown*, the Court of Appeals found that the writ was properly sought by an inmate who had been transferred from prison to "an institution for custody of prisoners who are declared insane," based on his contention that he was "sane" and should accordingly be returned to prison (*Dawson v Smith*, 69 NY2d at 691).

> "The confinement in *People ex rel. Brown v Johnston* . . . was in an institution separate and different in nature from the correctional facility to which petitioner had been committed pursuant to the sentence of the court, and was not within the specific authorization conferred on the Department of Correctional Services by that sentence" (*id.*).

By contrast, in *Dawson*, the Court found that habeas relief was properly denied as petitioner did "not seek his release from custody in the facility, but only from confinement in the special housing unit, a particular type of confinement within the facility which the Department of Correctional Services [was] expressly authorized to impose on lawfully sentenced prisoners committed to its custody" (*id.*). This is analogous to the situation here.

While petitioner's avowed mission is certainly laudable, the according of any fundamental legal rights to animals, including entitlement to habeas relief, is an issue better suited to the legislative process (*see Lewis v Burger King*, 344 Fed Appx 470, 472 [10th Cir 2009], *cert denied* 558 US 1125 [2010]).

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (Barbara Jaffe, J.), entered January 29, 2016, declining to sign an order to show cause seeking the transfer of Kiko to a primate sanctuary, and the judgment (denominated an order) of the same court and Justice, entered July 8, 2016, effective nunc pro tunc as of December 23, 2015, declining to sign an order to show cause seeking such relief on behalf of Tommy, should be affirmed, without costs.

RENWICK, J.P., MAZZARELLI, MANZANET-DANIELS and FEINMAN, JJ., concur.

Judgment (denominated an order), Supreme Court, New York County, entered January 29, 2016, and judgment (denominated an order), same court and Justice, entered July 8, 2016, affirmed, without costs.