People ex rel. Carroll v Keyser (2020 NY Slip Op 03169)





People ex rel. Carroll v Keyser


2020 NY Slip Op 03169


Decided on June 4, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 4, 2020

531323

[*1]The People of the State of New York ex rel. Nora Carroll, on Behalf of Jalil Muntaqim, Also Known as Anthony Bottom, Respondent,
v William Keyser, as Superintendent of Sullivan Correctional Facility, et al., Appellants.

Calendar Date: May 28, 2020

Before: Garry, P.J., Mulvey, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Letitia James, Attorney General, Albany (Frank Brady of counsel), for appellants.
The Legal Aid Society, New York City (Nora Carroll of counsel), for respondent.
Cynthia Grant Bowman, Cornell Law School, Ithaca, for American Civil Liberties Union and others, amici curiae.



Devine, J.
(1) Appeal from an order of the Supreme Court (Schick, J.), entered April 29, 2020 in Sullivan County, which, among other things, granted petitioner's application, in a proceeding pursuant to CPLR article 70, and discharged Jalil Muntaqim, and (2) motion for permission to file an amicus brief.
Jalil Muntaqim, formerly known as Anthony Bottom, is a 68-year-old black inmate at Sullivan Correctional Facility (hereinafter SCF), where he is serving concurrent prison sentences of 25 years to life following his 1975 conviction of murder (two counts) (People v Bottom, 58 AD2d 1042 [1977]). On April 13, 2020, petitioner commenced this special proceeding for a writ of habeas corpus on Muntaqim's behalf, alleging that his advanced age, race and underlying medical conditions left him in significant danger of serious illness and death if infected with SARS-CoV-2, the novel coronavirus responsible for causing COVID-19. Petitioner argued that, because the risk of infection was high in the close quarters of SCF and Department of Corrections and Community Services (hereinafter DOCCS) officials were failing to protect Muntaqim from that risk, his continued detention there amounted to unconstitutional punishment that was "cruel and unusual" and excessive (US Const, 8th Amend; NY Const, art I, § 5; see People v Broadie, 37 NY2d 100, 111-112 [1975], cert denied 423 US 950 [1975]). Respondents, in lieu of filing a return, moved to dismiss the petition for failure to state a cause of action and failure to exhaust administrative remedies (see CPLR 3211 [a] [7]). Following oral argument, Supreme Court ruled on the record that, although DOCCS had "done nothing wrong," DOCCS was not in a position to address the health risks posed to Muntaqim by his continued incarceration during the COVID-19 pandemic. Supreme Court accordingly directed Muntaqim's "immediate emergency release" to a private residence, where he would "continue to serve his sentence" and do so "under the jurisdiction of [DOCCS]." Respondents appeal from the order that ensued, and this Court granted a stay.
To begin, respondents advise us that Muntaqim became infected during the pendency of this appeal and is currently hospitalized with COVID-19. In light of the lack of clarity as to what DOCCS plans for Muntaqim if he recovers, we do not believe that the change in Muntaqim's situation renders this appeal moot. To the extent that it does, the exception to the mootness doctrine applies, as the issues presented are novel, likely to recur and, given the emergent nature of the coronavirus contagion and the need to address the rights of at-risk prison inmates before they are infected by it, would typically evade review (see Matter of Bezio v Dorsey, 21 NY3d 93, 100 [2013]; People ex rel. Dawson v Smith, 69 NY2d 689, 691 n [1986]).
Turning next to a procedural point, respondents moved to dismiss the petition and never served a return. That said, their motion papers contained much of the information that would be expected in a return, the facts were not in serious dispute and, after the merits were explored at oral argument before Supreme Court, a final order was issued that reached the merits and directed Muntaqim's release to home confinement (see e.g. CPLR 7009, 7010 [a]; People ex rel. Pray v Allen, 63 AD2d 1056, 1056 [1978], lvs denied 45 NY2d 707, 774 [1978]). Inasmuch as Supreme Court was not obliged to direct respondents to serve a return in this special proceeding before issuing a final order, and respondents do not seek the opportunity to serve one, we see no reason to remit for that purpose and address the order as having been rendered on the merits (see CPLR 404 [a]; 7001, 7008 [a]; Matter of Dodge, 25 NY2d 273, 286-287 [1969]; Matter of Cunningham & Kaming, 75 AD2d 521, 522 [1980]).
As for the merits, we acknowledge the unsettled state of the law as to whether habeas corpus lies to challenge the conditions of confinement for individuals in Muntaqim's position.[FN1] We need not, and do not, resolve that question, nor do we resolve the issue of whether Supreme Court exceeded its authority in fashioning the unique relief it granted, as petitioner failed to meet her ultimate burden in this habeas corpus proceeding of showing that Muntaqim's detention at SCF is illegal (see CPLR 7002 [a]; 7010 [a]; People ex rel. Ferro v Brann, AD3d , , 121 NYS3d 658, 659 [2020]; People ex rel. Romano v Thayer, 229 App Div 687, 691 [1930]). We therefore reverse.
Petitioner alleges illegal confinement in two respects, both of which involve the federal and state constitutional prohibitions against cruel and unusual punishment (see US Const, 8th Amend; NY Const, art I, § 5).[FN2] The first argument is that prison officials failed to protect Muntaqim from the risk of contagion and thereby exhibited "'deliberate indifference' to a substantial risk of serious harm to" him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment (Farmer v Brennan, 511 US 825, 828 [1994]; accord Tatta v State of New York, 19 AD3d 817, 819 [2005], lv denied 5 NY3d 712 [2005]; see Helling v McKinney, 509 US 25, 32-33 [1993]; Hudson v Palmer, 468 US 517, 526-527 [1984]; Matter of Wooley v New York State Dept. of Correctional Servs., 15 NY3d 275, 282 [2010]). Petitioner must make two showings to succeed on that claim, the first being that Muntaqim is objectively "incarcerated under conditions posing a substantial risk of serious harm" (Farmer v Brennan, 511 US at 834; see Helling v McKinney, 509 US at 35; Matter of Wooley v New York State Dept. of Correctional Servs., 15 NY3d at 282). The second is that prison officials exhibit deliberate indifference, meaning that, subjectively, their actions reflect a state of mind, akin to criminal recklessness, in which they consciously disregard the risk of harm (see Farmer v Brennan, 511 US at 839-840; see Walker v Schult, 717 F3d 119, 125 [2d Cir 2013]; Salahuddin v Goord, 467 F3d 263, 280 [2d Cir 2006]; Matter of Wooley v New York State Dept. of Correctional Servs., 15 NY3d at 282).
Petitioner arguably established that Muntaqim was "incarcerated under conditions posing a substantial risk of serious harm" (Farmer v Brennan, 511 US at 834; see Helling v McKinney, 509 US at 35). Annexed to the petition is a letter from a physician who discussed Muntaqim's medical condition and opined that he was at extreme risk of "a serious and possible fatal outcome if infected with the novel coronavirus" responsible for causing COVID-19, as well as a letter from a group of physicians who explained that the novel coronavirus is quite infectious and that serious outbreaks in prisons were inevitable given the close contact between individuals inherent to the prison setting. Moreover, petitioner represented to Supreme Court at oral argument that the situation had worsened since the filing of the petition, as at least one inmate at SCF had developed COVID-19 and further spread in the facility could be expected. What petitioner failed to demonstrate, however, was deliberate indifference on the part of prison officials. Petitioner provided nothing from anyone with firsthand knowledge — including Muntaqim, who neither verified the petition nor submitted an affidavit in support of it — as to what was being done to combat the spread of the novel coronavirus at SCF or to protect inmates at high risk from COVID-19. In contrast, respondents came forward with the affidavit of respondent Superintendent of SCF, who detailed the steps that had been taken up to that point to prevent the introduction of the novel coronavirus into the facility and reduce the risks of potential transmission. Among other things, those steps included taking the temperature of anyone who entered the facility, halting the intake and transfer of inmates, suspending inmate visitation, directing that nonessential personnel remain home, implementing social distancing and enhanced cleaning procedures at SCF that complied with Centers for Disease Control and Prevention guidelines, requiring that staff wear face masks while in contact with inmates, requiring inmates working in food service to wear masks and allowing other inmates to wear them. It is evident from the foregoing that prison officials did not disregard the risks posed by COVID-19 and, indeed, Supreme Court determined that DOCCS had "done nothing wrong" in its response to the burgeoning threat. Petitioner has not demonstrated the subjective element of deliberate indifference required to establish an Eighth Amendment violation.
Notwithstanding the urging of the parties, we are skeptical that we may consider developments after the issuance of the appealed-from order in assessing its propriety, as "appellate review is limited to the record made at nisi prius and, absent matters which may be judicially noticed, new facts may not be injected at the appellate level" (Broida v Bancroft, 103 AD2d 88, 93 [1984]; accord Paoletti v Karian, 266 AD2d 691, 691 [1999]; see Jackson v Dow Chem. Co., 295 AD2d 855, 857 [2002]). To the extent that we may consider subsequent developments, however, they do not compel a different result.[FN3] The spread of the novel coronavirus at SCF, as well as Muntaqim's infection and hospitalization, reflect the existence of a "substantial risk of serious harm" to inmates (Farmer v Brennan, 511 US at 834). Prison officials took a variety of steps to address the deteriorating situation at SCF, however, including delivering meals to inmates' cells, reducing inmate population density during outdoor recreation and providing masks to all inmates that may be used at any time and are required during indoor recreation. Further, on the unit where Muntaqim and others were infected, officials isolated the inmates who developed COVID-19, placed the remaining inmates into small groups kept apart from one another, required them to wear masks outside of their cells and checked them twice a day for COVID-19 symptoms. More generally, DOCCS has made some efforts to reduce population density at its facilities through the release of inmates. One could certainly infer from these modifications in procedure that the officials at DOCCS, like many other officials at all levels of government, failed to initially grasp the severity of the COVID-19 threat or the best methods of addressing it, and that they are now adapting to the situation. Deliberate indifference means more than being caught flat footed, or even negligent, and a failure to properly "alleviate a significant risk that [DOCCS officials] should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of [unconstitutional] punishment" (id. at 838; see Foreman v Elam, 796 Fed Appx 529, 531-532 [10th Cir 2019]; Williams v Kohler, 717 Fed Appx 734, 735 [9th Cir 2018]). As a result, the post-order developments at SCF do not reveal the infliction of cruel and unusual punishment.
Petitioner further alleges that Muntaqim was illegally confined in that his sentence, although lawful when imposed, became grossly excessive due to the risks created by the ongoing pandemic. There is no doubt that sentences authorized by statute may nevertheless be "so disproportionate as would constitute cruel and unusual punishment in violation of constitutional limitations" (People v Broadie, 37 NY2d at 110; see US Const, 8th Amend; NY Const, art I, § 5). It is doubtful that a sentence proper at the time of imposition can become grossly disproportionate as a result of changed prison or inmate medical conditions (see Richardson v State of New York, 182 Misc 2d 845, 847-848 [1999]) or that such a challenge could be raised anywhere other than in a postconviction motion to the sentencing court (see People v Pena, 28 NY3d 727, 730 [2017]; People ex rel. McCray v Favro, 178 AD3d 1241, 1242 [2019]; see also CPL 440.20 [1]; People v Diaz, 179 Misc 2d 946, 951 [1999]; Richardson v State of New York, 182 Misc 2d at 848). To the extent that the issue is properly before us, our review of the factors articulated in People v Broadie (37 NY2d at 110-113) satisfies us that Muntaqim's punishment is not "so grossly disproportionate to [his] offense as to amount to an unconstitutionally cruel and unusual punishment" (People v Jones, 39 NY2d 694, 697 [1976]). Thus, as petitioner failed to demonstrate the illegality of Muntaqim's confinement, Supreme Court should have dismissed the petition.
Garry, P.J., Mulvey, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the motion is granted, without costs.
ORDERED that the judgment is reversed, on the law, without costs, and petition dismissed.



Footnotes

Footnote 1: Although we do not reach the question of whether habeas corpus is an available remedy to individuals in Muntaqim's position, we nevertheless find that an amicus curiae brief, prepared by numerous law professors and legal organizations, provides analysis that is novel and of some help. We accordingly grant their motion for leave to file and serve the brief (see Rules of App Div, All Depts [22 NYCRR] § 1250.4 [f])

Footnote 2: Petitioner does not seriously argue that discerning cruel and unusual punishment under the Eighth Amendment requires an inquiry different from that required under a similar provision that "was copied from the Eighth Amendment" into the State Constitution in 1846 (People v Broadie, 37 NY2d 100, 123 [1975], cert denied 423 US 950 [1975]; see NY Const, art I, § 5). It is nevertheless worth noting that the Court of Appeals has, in passing, declined to apply "a different analysis" for the state constitutional provision (People v Davis, 33 NY2d 221, 227 [1973], cert denied 416 US 973 [1974]).

Footnote 3: To one degree or another, all of the parties suggest that remittal is appropriate for further fact-finding on how the situation in SCF has changed since the issuance of the appealed-from order. We do not agree. Petitioner's remedy, should the facts change in a meaningful way, is to commence a new habeas corpus (or some other) proceeding (see CPLR 7003 [b]; Matter of Nonhuman Rights Project, Inc. v Lavery, 152 AD3d 73, 75-76 [2017], lv denied 31 NY3d 1054 [2018]; People ex rel. Woodard v Berry, 163 AD2d 759, 760 [1990], lv denied 76 NY2d 712 [1990]). The decisions of the Second Department cited by petitioner — which involve CPLR article 70 proceedings commenced in that Court — are not to the contrary (compare People ex rel. Grossfeld v Brann, 182 AD3d 556, 556 [2020]; People ex rel. Dieckmann v Warden, 182 AD3d 555, 555 [2020]).