[934 NE2d 310, 907 NYS2d 741]

In the Matter of ROBERT WOOLEY, Appellant, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Respondent.

Argued June 2, 2010; decided July 1, 2010

**POINTS OF COUNSEL**

*Hancock & Estabrook, LLP,* Syracuse (*Alan J. Pierce* of counsel), for appellant. The Department of Correctional Services' decision denying Robert Wooley the unanimously recommended low dose maintenance treatment for his hepatitis C disease violates his constitutional rights and is arbitrary and capricious, irrational and affected by error of law. (*Estelle v Gamble,* 429 US 97; *Matter of Domenech v Goord,* 196 Misc 2d 522, 20 AD3d 416; *Erickson v Pardus,* 551 US 89; *Johnson v Wright,* 234 F Supp 2d 352, 412 F3d 398; *De La Rosa v State of New York,* 173 Misc 2d 1007; *Matter of Lucas v Scully,* 71 NY2d 399; *Matter of Ronson v Commissioner of Correction, State of N.Y.,* 112 AD2d 488; *Brock v Wright,* 315 F3d 158; *Village of Willowbrook v Olech,* 528 US 562; *Wegman's Food Mkts. v State of New York,* 76 AD2d 95.)

*Andrew M. Cuomo, Attorney General,* Albany (*Owen Demuth, Barbara D. Underwood, Peter H. Schiff* and *Nancy A. Spiegel* of counsel), for respondent. The Department of Correctional Services' decision not to treat petitioner with an unproved experimental drug regimen that had not been approved by the federal

Food and Drug Administration was rational and consistent with the Eighth Amendment to the US Constitution. (*Wilson v Seiter*, 501 US 294; *Farmer v Brennan*, 511 US 825; *Matter of Peckham v Calogero*, 12 NY3d 424; *Matter of Hughes v Doherty*, 5 NY3d 100; *Matter of New York Assn. of Convenience Stores v Urbach*, 92 NY2d 204; *Matter of Michael B.*, 80 NY2d 299; *Forbes v Edgar*, 112 F3d 262; *Dean v Coughlin*, 804 F2d 207; *Tatta v Wright*, 616 F Supp 2d 308; *Dias v Vose*, 865 F Supp 53.)

*Legal Aid Society*, New York City (*Steven Banks, John Boston* and *Milton Zelermyer* of counsel), and *Prisoners' Legal Services*, Albany (*Karen Murtagh-Monks* of counsel), for Legal Aid Society of the City of New York, and another, amici curiae. I. The Department of Correctional Services' denial of hepatitis C treatment was deliberately indifferent to Robert Wooley's medical needs and therefore violated his right to be free of cruel and unusual punishment. (*Estelle v Gamble*, 429 US 97; *Matter of Shomo v Zon*, 35 AD3d 1227; *Matter of Scott v Goord*, 32 AD3d 638; *Matter of Domenech v Goord*, 20 AD3d 416; *Matter of Davis v Goord*, 7 AD3d 889; *Matter of Jarvis v Pullman*, 297 AD2d 842; *Matter of Bryant v Brunelle*, 284 AD2d 936; *Matter of Smith v Alves*, 282 AD2d 844; *Matter of Allah v White*, 243 AD2d 913; *Matter of Moore v Leonardo*, 185 AD2d 489.) II. The arbitrary and capricious standard is not an appropriate standard of review for prisoners' constitutional claims of inadequate medical care but nevertheless, judged by that standard, the Department of Correctional Services' denial of maintenance therapy was arbitrary, capricious, irrational and affected by error of law. (*Cove v Sise*, 71 NY2d 910; *Matter of Curtiss v Angello*, 269 AD2d 675; *Matter of Parkinson v Columbia County Dist. Attorney*, 178 Misc 2d 52; *Matter of Patel v Fischer*, 67 AD3d 1193; *Matter of Scott v Goord*, 32 AD3d 638; *Matter of Altamore v Barrios-Paoli*, 90 NY2d 378; *Matter of Nehorayoff v Mills*, 282 AD2d 932; *Matter of Davis v Goord*, 7 AD3d 889; *Matter of Bryant v Brunelle*, 284 AD2d 936; *Matter of Amaker v Goord*, 280 AD2d 792.)

### OPINION OF THE COURT

CIPARICK, J.

In this case, we must determine whether the denial of certain medical treatment to an inmate by the New York State Department of Correctional Services (DOCS) was arbitrary and capricious, or violative of the Eighth Amendment's proscription against cruel and unusual punishment. We conclude that it was neither.

I.

Petitioner Robert Wooley has been incarcerated in the custody of DOCS since the late 1980s. Sometime prior to 2001, petitioner was diagnosed with hepatitis C, a viral infection which increases the risk of liver cancer and often leads to cirrhosis of the liver, which can cause liver failure and, ultimately, death.

In 2001, petitioner's treating physician at DOCS prescribed a combination of drugs—interferon and ribavirin—for a course of treatment lasting 48 weeks. Petitioner initially responded well to the medication, which was the standard treatment protocol for hepatitis C at the time. At the end of the treatment period, petitioner's hepatitis C viral load was so low as to be undetectable.

Shortly before the treatment period was to end, petitioner contacted Dr. Lester Wright, the Chief Medical Officer for DOCS, by letter, requesting six additional months of the interferon/ribavirin combination treatment, followed by low-dose maintenance interferon therapy. Petitioner submitted medical literature in support of his request; he also contended that, because his hepatitis C fell within the "hard to treat" category, low-dose maintenance interferon therapy could be the only option for slowing the progression of his disease. According to petitioner, Dr. Wright did not respond to his request.

Several months later, in October 2002, petitioner wrote to Dr. Marc Stern, a DOCS Regional Medical Director. According to petitioner's letter and supporting medical tests, he had suffered a relapse following the cessation of treatment with interferon/ribavirin. He requested the continuation of the combination therapy, replacing standard interferon with a more effective, newly-developed pegylated interferon.[1] At the time of petitioner's request for retreatment, the Food and Drug Administration (FDA) had not approved the use of pegylated interferon for retreatment after a course of standard interferon/ribavirin, and DOCS rejected petitioner's request for such off-label[2] use of the drug.

---

1. Pegylated interferon, also called PEGASYS, is interferon with an additional side chain of polyethylene glycol. The "pegylation" gives the interferon a longer bioavailability, allowing for fewer injections.

2. The term "off-label" refers to the use of a medication or medical device other than that for which the FDA approved it (see Buckman Co. v Plaintiffs' Legal Comm., 531 US 341, 350 [2001]).

Thereafter, a consulting physician examined petitioner and recommended retreatment with pegylated interferon and ribavirin. Based on the recommendation, petitioner's treating physician again sought approval from Dr. Wright to re-treat with a 48-week course of pegylated interferon/ribavirin combination therapy. After consulting with "[his] expert," Dr. Wright decided to "approve re[-]treatment with pegylated interferon and ribavirin for up to 48 weeks."

As petitioner neared completion of re-treatment, his treating physician examined him again, and opined that he would benefit if he continued on low-dose maintenance pegylated interferon. In correspondence to a different staff physician, Dr. Wright rejected the use of maintenance therapy, observing that the recommended treatment was not supported by published studies, but that a "large study [was] ongoing to determine whether it is of value." Dr. Wright also noted: "Any such use would be experimental . . . If there is something particular about this patient and he should be enrolled into an FDA[-]approved clinical trial in the community[,] that could be considered."

In July 2004, a second consulting physician noted that "[b]ecause of mortal consequences of progression of cirrhosis[,] maintenance therapy was proposed." Seven months later, the same physician noted that petitioner's blood test revealed an increased viral load, and he noted at the time that a "[m]aintenance dose of peg[ylated interferon] would be a reasonable strategy to stave off progression to . . . cirrhosis . . . This is an approach that has support in literature though [is] by no means proved." In 2005, a new liver biopsy revealed mild inflammation and fibrosis in petitioner's liver, but no cirrhosis.

In April 2006, an infectious disease specialist examined petitioner and suggested that consideration should be given to maintenance therapy with pegylated interferon, noting that "[t]here is evidence in published literature for this approach although [it is] not FDA approved or proven in long[-]term studies yet." In all, five doctors examined petitioner and recommended that he receive low-dose maintenance pegylated interferon. Dr. Wright again denied the request to place petitioner on low-dose therapy, prompting petitioner to file a grievance, which DOCS denied.

After exhausting his administrative remedies, petitioner commenced this CPLR article 78 proceeding to annul the determi-

nation denying his grievance, alleging that the denial of his requested treatment was arbitrary and capricious and violated his Eighth Amendment right to be free of cruel and unusual punishment. Supreme Court denied the petition and dismissed the proceeding, reasoning that DOCS's determination to deny the requested treatment was rational and did not constitute deliberate indifference to petitioner's condition in violation of the Eighth Amendment.

The Appellate Division affirmed (61 AD3d 1189 [2009]). We granted petitioner leave to appeal (13 NY3d 705 [2009]), and now affirm.

## II.

Petitioner contends that DOCS's denial of his requested medical treatment was arbitrary and capricious. We disagree. Generally, in a CPLR article 78 proceeding, we examine whether the action taken by the agency has a rational basis (*see e.g. Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]). We may overturn administrative action where it is "taken without sound basis in reason" or "regard to the facts" (*id.*, citing *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). If we conclude "that the determination is supported by a rational basis, [we] must sustain the determination even if [this C]ourt concludes that it would have reached a different result than the one reached by the agency" (*id.*, citing *Matter of Pell*, 34 NY2d at 231).

Here, a rational basis exists for DOCS's determination denying petitioner's requested maintenance therapy. The use of the medication sought by petitioner was unproven in long-term studies and not yet approved by the FDA, as even those doctors who suggested the maintenance treatment recognized. It simply cannot be said that DOCS's determination to deny the treatment lacked a rational basis. Significantly, the record underscores that the determination was made after consideration of the facts of the case, as indicated by Dr. Wright's denial of the maintenance therapy on the ground that "no published studies support[ed] th[e] idea" and that it was therefore "experimen-

tal."[3] Accordingly, petitioner's complaint that the determination was a reflexive application of DOCS policy[4] is misplaced.

To the extent that petitioner suggests that the treatment would not be experimental, we decline to weigh the varying studies available in the medical literature. It is sufficient for our purposes that petitioner's treating and consulting physicians recognized that the treatment was not yet proven effective, and we conclude that such recognition of the lack of documented success of maintenance levels of pegylated interferon constitutes a rational basis for the DOCS determination denying treatment with a non-FDA-approved protocol.

### III.

Petitioner also contends that DOCS's denial of the requested treatment constitutes cruel and unusual punishment, as prohibited by the Eighth Amendment of the United States Constitution. Again, we disagree. Prison inmates

> "rely on prison authorities to treat [their] medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' the evils of most immediate concern to the drafters of the Amendment" (*Estelle v Gamble*, 429 US 97, 103 [1976] [citation omitted]).

In less serious cases, the "denial of medical care may result in pain and suffering which . . . serve [no] penological purpose" (*id.*). The United States Supreme Court has explained that the Eighth Amendment requires that prison officials provide "adequate" medical care to inmates (*see Farmer v Brennan*, 511 US

---

**3.** The dissent observes that "the treatment [requested by petitioner] offers at least some possibility of protecting petitioner against a life-threatening illness" (dissenting op at 283). The dissent also complains that nothing in the record indicates that the requested treatment would "subject [petitioner] to any medical risk that would outweigh its *possible benefits*" (*id.* [emphasis added]). This ignores the fact that petitioner's examining doctors and the ultimate decision maker, Dr. Wright, unanimously agreed that the treatment was unproven and thus had no known benefits. Despite the dissent's apparent belief to the contrary, DOCS is hardly required to furnish any and all medical treatment requested by an inmate that might prove even marginally beneficial.

**4.** DOCS Research Directive No. 0403 prohibits "non-therapeutic medical experimentation [on inmates], including the use of unestablished drugs and unapproved medical techniques." (Available at http://www.docs.state.ny.us/Directives/0403.pdf.)

825, 832 [1994]). A violation of the Eighth Amendment can be proven only if an inmate can demonstrate that prison officials have acted with "deliberate indifference to [his or her] serious medical needs" (*Estelle*, 429 US at 104 [citation omitted]).

This "deliberate indifference" standard is comprised of an objective component and a subjective component (*see e.g. Salahuddin v Goord*, 467 F3d 263, 279-280 [2d Cir 2006]). The objective component of the test examines whether the deprivation of medical care was "sufficiently serious" (*Farmer*, 511 US at 832; *see also Salahuddin*, 467 F3d at 279). This objective component in turn requires the examination of two factors: First, "whether the prisoner was actually deprived of adequate medical care" (*Salahuddin*, 467 F3d at 279), and second, "whether the inadequacy in medical care is sufficiently serious" (*id.* at 280). Thus, the objective component of the standard is essentially a reasonableness inquiry. In other words, the question is whether the response of prison officials to the inmate's medical needs was objectively reasonable under the circumstances (*see id.* at 279-280).

The subjective component of the deliberate indifference standard inquires whether "the charged official . . . act[ed] with a sufficiently culpable state of mind" (*id.* at 280, citing *Wilson v Seiter*, 501 US 294, 300 [1991]). The Second Circuit has explained this subjective requirement as follows:

> "In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result" (*id.* [citations omitted]).

When the medical determination made by a prison official was in accordance with a prison policy, the question is whether "*following* the policy resulted in deliberate indifference to [the inmate's] medical needs" (*Brock v Wright*, 315 F3d 158, 166 [2d Cir 2003] [emphasis added]; *Johnson v Wright*, 412 F3d 398, 404 [2d Cir 2005]).

■ Under the circumstances presented here, it cannot be said that the denial of petitioner's requested treatment constituted

"deliberate indifference" to his serious medical needs, as the decision to withhold the specific treatment requested was neither objectively unreasonable nor made with subjective recklessness. Although it is true that hepatitis C is a serious medical condition which can ultimately lead to liver failure and death, petitioner here received not one but two 48-week courses of the medically-accepted treatment for his disease. Petitioner was referred to and examined by several specialists. The maintenance treatment petitioner sought was recognized by most if not all of these specialists to be unproven in long-term studies and not yet approved by the FDA. Finally, DOCS pledged that it will continue to evaluate and consider treating petitioner with any new treatment methodologies which may be developed in the future. Although petitioner did not receive the precise treatment he desired, under these facts, the medical treatment provided was constitutionally adequate.

In sum, the determination by DOCS denying petitioner further maintenance therapy after the completion of two 48-week courses of treatment was not arbitrary or capricious, nor was it deliberately indifferent to his medical needs in violation of the Eighth Amendment. Accordingly, the order of the Appellate Division should be affirmed, without costs.

SMITH, J. (dissenting). I see no rational basis for DOCS's decision, and would hold it to be arbitrary and capricious. I would not reach the constitutional question.

Petitioner seeks a course of treatment which, it is undisputed, he may lawfully have. The FDA classifies it as "experimental," but does not forbid doctors from prescribing it for their patients. Every doctor who examined petitioner—five in all—agreed that the treatment was medically indicated.

DOCS nevertheless refused to make the treatment available. Its reasons are not clear to me, either from DOCS's submissions or from the majority opinion's interpretation of them. Indeed, it is unclear to me whether DOCS claims to be, or the majority thinks it is, acting in petitioner's interest or its own.

If only petitioner's interests are considered, I see no possible defense of DOCS's denial. It is undisputed, on this record, that the treatment offers at least some possibility of protecting petitioner against a life-threatening illness. Nothing in the record suggests that the course of treatment he seeks would endanger him, or subject him to any medical risk that would outweigh its possible benefits.

DOCS has sought to justify its position by reference to its own policy statement, which says: "Medical or cosmetic experimentation and pharmaceutical testing may not be conducted on inmates." (DOCS Research Directive No. 0403, available at http://www.docs.state.ny.us/Directives/0403.pdf.) The purpose of this policy is self-evident: to prevent inmates from being used as guinea pigs in scientific research. The policy has no rational application here. No pharmaceutical company or research laboratory is trying to use petitioner to test an unproven product. Petitioner, supported by five physicians familiar with his case, is trying to get for his own use a course of treatment that the FDA has called "experimental." It does not make sense to deny him that treatment in order to protect him from being experimented on.

I can conceive no rational basis for DOCS's decision to withhold treatment unless it is to avoid the cost. I do not suggest that consideration of cost, even when it comes to treatment of dangerous illnesses, is irrational. There is surely some point at which the cost of treatment is so high, and the likelihood of benefit to the patient so low, that DOCS could reasonably decide that an expenditure of public funds is unjustified.

Perhaps that is the case here. But DOCS has not said so. It has not tried to justify its decision on cost-benefit grounds; it has not even disclosed what it thinks the treatment petitioner is asking for would cost. Under the circumstances, I cannot avoid the conclusion that DOCS has advanced no rational basis for the decision it made.

Judges GRAFFEO, READ and PIGOTT concur with Judge CIPARICK; Judge SMITH dissents in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

Order affirmed, without costs.