(April 26, 2012)

■ In the Matter of JERRY DELAKAS, Appellant, v JONATHAN MINTZ, in His Capacity as Commissioner of the New York Department of Consumer Affairs, Respondent. [943 NYS2d 60]—

Order and judgment (one paper), Supreme Court, New York County (Cynthia S. Kern, J.), entered April 4, 2011, which denied the petition and dismissed a CPLR article 78 proceeding to annul and vacate respondent's determination, dated January 6, 2011, denying petitioner's application to renew a license to operate an existing newsstand, affirmed, without costs.

Respondent's determination that petitioner does not qualify for a license pursuant to 6 RCNY 2-64 (a) (12) has a rational basis (*see Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 [2010]). As the dissent points out, 6 RCNY 2-64 (a) (12) mandates three requirements that must be met before a license to operate a newsstand may be assigned upon the death or disability of the named license holder. Even a cursory review of the first subparagraph shows that petitioner does not qualify. It reads: "(A) the applicant is a dependent spouse, dependent domestic partner, dependent child or one-time employee of the former licensee, or bears another pre-existing, established relationship to such former licensee that included financial dependence on such licensee." Petitioner had been paying a monthly rent to successive owners of the operating license since 1987. He never sought the license in his own

name until the last named licensee passed away and he could no longer continue the improper relationship. Thus, it was the license, and not any of the *three* previous holders, on which petitioner was dependent.*

Finally, although not necessary for this determination, it was certainly a rational conclusion that petitioner had to be aware of the illicit, under the table arrangement he facilitated by his payments to three separate owners beginning as far back as 1987; each owner submitted sworn statements that he/she was the operator of the newsstand while petitioner openly operated it.

The dissent recognizes that our review of this matter is limited to whether there is any rational basis for respondent's determination. Regardless of whether we agree with it, on this record, it cannot be said that respondent's determination is irrational.

Petitioner is free to seek a license under his own name (6 RCNY 2-64 [a] [1]-[11]). He just may not jump ahead of those who are given priority as a matter of law.

We have reviewed petitioner's remaining contentions and find them unavailing. Concur—Gonzalez, P.J., Sweeny and Manzanet-Daniels, JJ.

Mazzarelli and Andrias, JJ., dissent in an memorandum by Andrias, J., as follows: Upon the death of the licensee, petitioner submitted an application pursuant to 6 RCNY 2-64 (a) (12) seeking to renew and transfer to his name the license for the newsstand at the corner of Lafayette Street and Astor Place, which petitioner had operated for more than 20 years and rebuilt in 1993 at a cost of approximately $55,000. By letter dated January 6, 2011, respondent denied the application on the ground that petitioner "ha[d] not demonstrated that [respondent] should exercise discretion to issue a license to [petitioner] under section 2-64 (a) (12) of the Rules of the City of New York, the applicable provision." The letter did not provide any further explanation.

Supreme Court found, and the majority agrees, that respondent's denial of the application had a rational basis since there is no evidence that the licensees employed petitioner or that he was financially dependent upon them. Under the record before us, I disagree and would grant the petition.

6 RCNY 2-64 (a) (12) provides:

"Death or disability of licensee. At the discretion of the Com-

---

* As petitioner does not meet the first requirement of section 2-64 (a) (12), it is not necessary to address the other two.

missioner or his or her designee, upon the death or permanent disability of the person who was licensed to operate a newsstand at a location, DCA [Department of Consumer Affairs] may accept an application for a license to operate such existing newsstand where:

"(A) the applicant is a dependent spouse, dependent domestic partner, dependent child or one-time employee of the former licensee, or bears another pre-existing, established relationship to such former licensee that included financial dependence on such licensee;

"(B) the applicant demonstrates to DCA that the operation of such newsstand will be his or her principal employment; and

"(C) the applicant is a person to whom the grant of such license would be in the interests of fairness."

Petitioner satisfies these requirements.

First, petitioner has the "pre-existing, established relationship" to the former licensees contemplated by section 2-64 (a) (12) (A). The record establishes that the license for the newsstand was issued to Stella Schwartz, and transferred to her sister, Katherine Ashley, and that they allowed petitioner to operate the stand since 1987 in exchange for a fee of $75 per week. When Katherine died in 2006, a provision in her last will and testament stated her "wish" that petitioner, who had diligently conducted the day to day operations of the newsstand for many years, and with whom she had "developed a warm, trusting and loving relationship," continue to operate it and succeed her as "franchisee." While the license was instead transferred in 2008 to Katherine's husband, Sheldon, petitioner continued to operate the newsstand on the same terms that he had with Katherine.

Supreme Court found that this established relationship was not enough because petitioner did not demonstrate that he had a financially dependent relationship with the licensee, as required by section 2-64 (a) (12) (A). Supreme Court reasoned that petitioner was financially dependent on the license, not on the licensee. This amounts to a distinction without a difference under the practical realities of this case. Petitioner operated the newsstand pursuant to an agreement with the Ashleys, who held the license. The newsstand provided petitioner with his livelihood, and he was dependent on the Ashleys to continue their arrangement with him, which, as evidenced by Katherine's will, grew into more than a pure business relationship.

Second, petitioner complied with section 2-64 (a) (12) (B) by submitting an affidavit stating that "[u]pon receipt of the

license, the operation of said newsstand would be my principal employment in accordance with Section 20-229 of the Administrative Code of New York. If I am licensed to operate the Newsstand by the Department, operation of the Newsstand shall be my principal employment as long as I am so-licensed."

Third, petitioner "is a person to whom the grant of such license would be in the interests of fairness," as required by section 2-64 (a) (12) (C). Petitioner has operated the newsstand continuously since 1987 and it is the source of his livelihood. Based on his understanding with Katherine that he would continue to operate the newsstand indefinitely, in or about 1993, he rebuilt it at a cost of approximately $55,000. When Katherine died, in recognition of petitioner's diligent efforts at the newsstand and their "warm, trusting and loving relationship," she expressed her wish that petitioner continue the franchise.

Respondent argues that the denial of the application was rational because petitioner participated in an unlawful under-the-table arrangement under which he rented the newsstand from the licensees, who submitted fraudulent renewal applications to DCA over a period of years. However, petitioner did not sign those applications and respondent has not shown that petitioner was aware that he was violating any laws or rules when he paid the licensees $75 per week to operate the newsstand. Indeed, the record shows that petitioner openly operated the newsstand and was recognized in the neighborhood as its operator, as reflected in published articles and his blog.

In light of the foregoing, although petitioner did not have a prescriptive right to the renewal of the license in his name under 6 RCNY 2-64 (a) (12), the denial of his application was an unjustifiable exercise of discretion that shocks the judicial conscience given that it will deprive petitioner of the business that he has painstakingly built up over a period of more than 20 years. **[Prior Case History: 2011 NY Slip Op 30670(U).]**